LYDA DORSEY

*v.*

BEULAH E. SHORT, *et al.*

(No. 13372)

Decided June 4, 1974.

*James H. Wolverton, Ralph Dunn,* for appellant.

*J. M. Tully,* for appellees.

SPROUSE, JUSTICE:

This case is before the Court upon appeal from the judgment of the Circuit Court of Nicholas County. The action was instituted by Lyda Dorsey, as plaintiff, against Beulah E. Short and the Nicholas County Bank, as defendants. Lyda Dorsey is the mother of Beulah E. Short. The action is to recover money deposited by Lyda Dorsey in a savings account jointly in her name and her daughter's name. The circuit court, by an order entered June 13, 1972, granted summary judgment in favor of the plaintiff mother, and against the defendant daughter, dismissing the Nicholas County Bank as a party defendant.

It is uncontroverted that the sum of money involved is $4,608.00; that it became the property of the plaintiff mother upon the death of her husband; that the money

was deposited in the Farmers and Merchants Bank of Summersville in a joint and survivorship savings account in the name of the plaintiff and defendant; that the defendant made no contributions to the account; and that the defendant withdrew the money without the knowledge of the plaintiff, depositing it in a separate bank, the Nicholas County Bank, in the joint name of the defendant and her husband.

The facts upon which the circuit court based its action on the summary judgment motion are contained in the complaint, the answer, defendant's answers to interrogatories, and an affidavit by the plaintiff. Although the above recited facts are uncontroverted, the parties present different versions of other aspects of the transaction.

The plaintiff avers that the money was her sole and separate property; that her daughter, the defendant, suggested to her that she add the defendant's name as a co-owner of said bank account so that, in the event of illness or other casualty to the plaintiff, the money could be withdrawn for the use and benefit of the plaintiff; that the plaintiff at no time intended a gift of the moneys or any part of it to the defendant and made repeated requests for the defendant to return the money to the plaintiff after the defendant had withdrawn it from one bank and deposited it in her own name in another bank.

The defendant daughter avers that it was the mother, not she, who suggested that the money be placed in a joint account; that the purpose of placing the money in the joint account was to permit the daughter to use the money for the construction of a new house for the daughter and her husband; that the daughter had advised her mother that she would not use the money unless it was absolutely necessary for the benefit of the mother or for the construction of the new house; that the mother had tendered to the daughter the savings passbook but that the daughter told her mother to put the passbook "in the trunk at the plaintiff's home", and this was agreed upon; and that both parties knew the location of the passbook

and either party would have access to it if needed. The defendant also denied that her mother, the plaintiff, ever requested the return of the money to her. The defendant specifically denied that the reason for placing the defendant's name on the account was so that the funds could be reached in case of illness.

The plaintiff contended before the circuit court and contends on appeal that the actions of the mother in depositing the money in a joint and survivorship account did not meet the common law requirement for perfecting a gift.

The controversy, however, cannot be determined under the common law rules relating to gifts but must be resolved under the provisions of the Code of West Virginia, 1931, Chapter 31A, Article 4, Section 33, as amended. That section provides in part:

> "When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them; and such payment and the receipt or the acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge for all payments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof."

The sole issue is whether the act of making a deposit by a donor in the form described in this section conclusively creates a joint tenancy property right in the donee or whether there can be a concomitant condition placed on the deposit by which the donor can defeat the donee's

property right during the donor's lifetime. If it is possible under the language of Code, 31A-4-33 to make such a conditional deposit, then this was a question of fact in this case and summary judgment would not have been proper. In *Lett v. Twentieth Street Bank,* 138 W.Va. 759, 77 S.E.2d 813, this Court interpreted the predecessor section to Code 31A-4-33 primarily as it related to the survivorship language in the statute. Section 33 contains virtually the same language as the statute interpreted in *Lett.* In *Lett,* the donor of the joint account had gratuitously added his sister as a joint tenant to the account and died with his sister surviving him. The administrator of the estate contended that the statute was solely for the benefit of banks—protecting them in their distribution of the account. He contended that no property right was conferred on the gratuitous donee of the joint bank account interest. In determining this contention, this Court said:

> "The statute above quoted is clear, unambiguous and needs no construction. The legislative purpose and intent in the enactment of the statute quoted in part above, was to protect banking institutions. In so doing, the statute created certain property rights in all of the depositors named in a savings account.

> "It is to be observed that the element of survivorship in a joint tenancy in real or personal property, in general, has been abolished by statute, Code, 36-1-19, which provides, in substance, that any interest theretofore belonging to a decedent, whether present, by way of reversion, remainder or other future interest, whether it be in real or personal property, shall be disposed of as if the person owning such interest had been a tenant in common.

> "But Code, 31-8-23 restored the element of survivorship as to joint deposits made in a bank. In this situation, unless there is some other reason for denying the plaintiff recovery, she is entitled to the deposit made by her brother and the accrued interest thereon. Joint tenancy having been restored as to joint bank deposits, the element of survivorship as it existed at common law, is

likewise restored as to such deposits." *Lett v. Twentieth Street Bank, supra* at 762, 77 S.E.2d at 814-15.

This Court, later in its decision, pointed out: "* * * We do not think that any question of gift or trust arises in determining the rights of the parties under the contract of the deposit." *Lett v. Twentieth Street Bank, supra* at 764, 77 S.E.2d at 815-16. *Lett* made two things abundantly clear—that Code, 31-8-23 (now 31A-4-33) was for the purpose of protecting banks and created *certain* property rights. The decision did not detail all elements of the property rights. It made it clear that in the absence of "some other reason for denying the plaintiff recovery" the joint deposit by the donor in his name and in the name of the donee, was valid to pass causa mortis any remaining funds to the surviving donee. Although involving a different statute, this Court discussed the *Lett* case in detail and with unqualified approval in *DeLong v. The Farmers Building and Loan Association,* 148 W.Va. 625, 137 S.E. 2d 11.

*Lett,* however, did not discuss what "other reason" there might be "for denying plaintiff recovery". No such reason was present in the transaction involved in that decision. In the absence of fraud, mistake or some equally serious fault, the decision in *Lett* created a conclusive presumption that the donor depositor of a joint account intended the money remaining in the account after his death to belong to the surviving joint tenant.

Most of the states in this country have statutes protecting banks in their administration of joint and survivorship bank accounts. They are of two general types. The first includes bank protection statutes, containing language similar to the provisions interpreted in *DeLong v. The Farmers Building and Loan Association, supra.* They merely protect the bank in dispersing proceeds to joint depositors without specifically creating a joint tenancy. The second includes statutes of similar intent which specifically state that such deposits create a joint tenancy.

Code 31A-4-33, the statute under consideration, is of this latter type, and there are nine jurisdictions in this country which have similar provisions. Kepner, *The Joint and Survivor Bank Account,* 41 CALIF. L. REV. 596; Kepner, *Five More Years of the Joint Bank Account Muddle,* 26 U. CHI. L. REV. 376; Wellman, *The Joint and Survivor Account in Michigan,* 63 MICH. L. REV. 629; ANNOT., 43 A.L.R. 3d 971. The cases in all jurisdictions interpreting these types of statutes have uniformly held that, during the joint lives of the depositors, a person donating the funds may show that he did not intend to create a joint tenancy, notwithstanding the account is in joint form. Despite somewhat confusing discussions in some of the cases, the universal thread or key to the decisions has been the intention of the donor depositor. Kepner, *The Joint and Survivor Bank Account,* 41 CALIF. L. REV. 596; Kepner, *Five More Years of the Joint Bank Account Muddle,* 26 U. CHI. L. REV. 376; Wellman, *The Joint and Survivor Account in Michigan,* 63 MICH. L. REV. 629. See, for example, the statement by Kepner in 26 U. CHI. L. REV. 376, 397:

> "The cases continue to hold that the party furnishing the funds for the account during his lifetime may show that he had no intention to make a gift, notwithstanding the form of the account. This is true in states which have statutes providing that the opening of the account in joint and survivorship form creates a joint tenancy and is also true in states that have a bank protection type statute. Not only may a party opening the account withdraw all the funds, but he may also terminate the interest to the co-depositor by merely instructing the bank to strike the latter's name from the account or to substitute another name. These acts are treated as tantamount to a withdrawal.

> "If joint tenancies are in fact established by the opening of an account in joint form, so that the survivor is entitled to the proceeds, it should follow that the donee has an interest in the account during his lifetime. But it does not work this way. If the depositor claims during his lifetime that he did not intend to create the joint tenancy,

notwithstanding the form of the account, the courts have found that no such tenancy was created and that the party opening the account and furnishing the funds prevailed over the non-contributing party."

See also *Esling v. City National Bank and Trust Company,* 278 Mich. 571, 270 N.W. 791; *Rasey v. Currey's Estate,* 265 Mich. 597, 251 N.W. 784. *Loeb v. Dry Dock Savings Bank,* 4 App. Div. 2d 190, 164 N.Y.S.2d 408, *aff'd,* 4 N.Y.2d 811, 149 N.E.2d 894, where the court treated the joint tenancy created by the statute as a presumption of joint ownership rebuttable prior to the death of the donor depositor, which presumption could be overcome by competent evidence. Similarly, see *In re Murphy's Estate,* 236 N.Y.S.2d 977, *rev'd on other grounds,* 259 N.Y.S.2d 228. The same result has been reached even where there had been withdrawals, the courts holding that such withdrawals do not destroy the joint tenancy but merely open the door to competent evidence, if available, that no joint tenancy was originally created. *Medeiros v. Cotta,* 134 Cal. App. 2d 452, 286 P.2d 546; *Shapiro v. Ridgewood Savings Bank,* 28 Misc. 2d 73, 213 N.Y.S.2d 408. See also, *Herwick v. Stiehl,* 68 Misc. 2d 850, 328 N.Y.S.2d 285, *Deal's Adm'r v. Merchants' and Mechanics' Savings Bank,* 120 Va. 297, 91 S.E. 135; 10 Am. Jur., *Banks,* § 372, page 335.

According to this Court's decision in *Lett,* Code 31A-4-33 creates *"certain* property rights in all of the depositors named in a savings account." It appears, however, by the language of that decision, "unless there is some other reason for denying the plaintiff recovery, she is entitled to the deposit * * *", that the Court recognized the almost universal interpretation of statutes similar to 31A-4-33. As indicated, all American courts ruling on similar statutory language have held that such establishment of statutory joint tenancy can be conditional and that, if the conditions imposed on the joint deposit are not met, the donor may retain control and even complete ownership of the deposit during the donor's lifetime.

Decisions holding that there may be conditions placed

on joint bank accounts wherein the donor depositor retains control or ownership during his lifetime are consistent with this Court's language in *Lett*. This Court there indicated there may be some reason for holding no intent to create an unqualified joint inter vivos property right in the joint bank account. Courts faced with interpreting these statutes have read this legislative intent in the laws. If the facts of this case are as alleged by the claimant mother, they amply demonstrate a reason for this policy.

Since the essential facts determining whether conditions were placed on the joint account are in dispute, the principal issue in this case can only be resolved by a trier of fact. The trial court, therefore, was in error in granting plaintiff's motion for summary judgment.

For reasons stated in this opinion, this case is reversed and remanded to the Circuit Court of Nicholas County.

*Reversed and remanded.*