401 S.E.2d 464

**Cheryl LUTZ, Individually and as Representative of the Beneficiaries Designated in Paragraph Sixth of the Will and Testament of Clara Folio**

v.

**Linda May ORINICK.**

No. 19480.

Supreme Court of Appeals of West Virginia.

Dec. 14, 1990.

Rehearing Denied Feb. 6, 1991.

P. Rodney Jackson, Lonnie C. Simmons, diTrapano & Jackson, Charleston, for Linda May Orinick.

Clark B. Frame, William L. Frame, Wilson, Frame & Metheney, Morgantown, for Cheryl Lutz.

McHUGH, Justice:

The appellant, Linda May Orinick, appeals from a jury verdict in the Circuit Court of Monongalia County finding that certain bank accounts and bonds held jointly by the decedent, Mary Folio, and the appellant were part of the estate of Mary Folio. The appellant contends, among other things, that the trial court erred in instructing the jury that the appellee, Cheryl Lutz, had to prove that Mary Folio had made a mistake in creating the joint bank accounts by a preponderance of the evidence rather than by clear and convincing evidence. We agree, and accordingly, the judgment of the Circuit Court of Monongalia County is reversed.

Joseph and Mary Folio were residents of Granville, West Virginia, and were married for approximately 60 years. The appellant met Mr. and Mrs. Folio in 1968, when she and her husband moved to Granville and became the Folios' neighbors. Although the appellant and her family eventually moved from Granville to Westover, approximately one and one-half miles from the Folios, they continued to be friends and to visit with one another.[1]

On March 22, 1985, Mr. Folio died. At the request of Mrs. Folio, the appellant handled the funeral arrangements, arranged for payment of all debts and expenses, and prepared the estate papers and settlement documents. Under his will, Mr. Folio had devised and bequeathed all of his assets to his wife, and had named the appellant as the alternate executrix of his estate.

Following her husband's death, Mrs. Folio asked the appellant to take her to four different banks. At these banks, Mrs. Folio changed certain bonds and savings accounts, worth approximately $262,000.00, into joint accounts with survivorship, and added the appellant's name to each account.[2]

On July 29, 1985, Mrs. Folio had a will drafted. Under that will, Mrs. Folio devised and bequeathed all of her assets to the appellant, with directions that the appellant distribute the assets among her relatives equally.

On March 25, 1986, Mrs. Folio had a second will drafted which again named the appellant as the executrix of the estate. However, under the second will, Mrs. Folio did not leave all of her assets to the appellant. Instead, she devised and bequeathed $1,000 to each of fourteen persons named in paragraph "6A" of the second will, and directed that any remaining money or bonds be devised and bequeathed to thirty-two other persons named in paragraph "6B" of that will.[3] The appellant, the appellant's mother, and the appellant's

---

1. The appellant presented evidence at trial that Mr. and Mrs. Folio were the godparents of the appellant's two daughters, and that they spent several holidays with the appellant and her family. The appellant and her family referred to Mr. and Mrs. Folio as "Aunt Mary" and "Uncle Joe."

2. While Mrs. Folio was alive, the appellant never exercised any control over the accounts.

Mrs. Folio maintained the passbooks and the possession of the bonds.

3. There were two separate paragraphs in the second will designated as the "sixth" paragraph. Thus, for the purpose of clarity in this appeal, we shall refer to those two paragraphs as "6A" and "6B."

daughter were among the thirty-two persons named in paragraph "6B" of the will.

Mrs. Folio died on March 29, 1987. At the time of her death, she had two checking accounts, one at the First National Bank with the amount of $14,189.08, and the other at the Westover Bank with the amount of $12,108.08. She also had four joint savings accounts with survivorship which amounted to a total of $162,371.25.[4] Mrs. Folio also possessed, at the time of her death, United States Savings Bonds in her name and the name of the appellant in the amount of $90,000.

On November 5, 1987, the appellee filed a complaint against the appellant, and requested that the circuit court declare all of the assets jointly held by Mrs. Folio and the appellant, with rights of survivorship, to be the property of the estate of Mrs. Folio, for distribution pursuant to her Last Will and Testament. In the complaint, the appellee alleged that the appellant had committed a constructive fraud and had exercised undue influence over Mrs. Folio. The appellant filed an answer to the complaint on December 7, 1987.

A trial was conducted before a jury on November 28, 1988, November 29, 1988, and November 30, 1988. At the close of the appellee's evidence, the appellant moved for a directed verdict on the ground that the evidence was insufficient to establish that Mrs. Folio had made a mistake in setting up the joint bank accounts. The trial court determined that there was insufficient evidence to support the theory of a constructive fraud, but concluded that there was sufficient evidence to submit to the jury on the issue of mistake. The appellant renewed her motion for a directed verdict at the close of the appellant's evidence, but the trial court denied the motion. The jury returned a verdict in favor of the appellee. It is from that judgment that the appellant now appeals.

The principal issue we shall address in this appeal is whether the trial court erred in instructing the jury that a mistake, under *W. Va. Code,* 31A–4–33 [1969], must be proven by a preponderance of the evidence rather than by clear and convincing proof.[5] The appellant contends that the evidence showing such mistake must be clear and convincing whereas the appellee maintains that the burden of proving Mrs. Folio made a mistake in creating the joint accounts is by a preponderance of the evidence.

In the absence of fraud, mistake, or other equally serious faults, there is a conclusive presumption, under the provisions of *W. Va. Code,* 31A–4–33 [1969],[6] that the funds remaining on deposit at the death of the donor depositor to the joint account belong to the surviving joint tenant, as we stated in syllabus point 2 of *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1974):

4. The four joint savings accounts consisted of $53,040.81 at the Westover Bank, $62,595.32 at First National Bank, $33,943.86 at First Federal Savings and Loan, and $12,791.26 at Citizens Industrial Financing Corporation.

5. The trial court recognized that the case of *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 253 S.E.2d 528 (1979) did not address the issue of the burden necessary to overcome the conclusive presumption of ownership in the surviving joint tenant created by *W. Va. Code,* 31A–4–33 [1969]. The trial court correctly pointed out that this Court only discussed the burden necessary to overcome the presumption of constructive fraud in connection with a joint account when the parties to the account occupy a confidential or fiduciary relationship.

6. *W. Va. Code,* 31A–4–33 [1969], provides, in relevant part:
   When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them; and such payment and the receipt or the acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge for all payments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof.

Code, 1931, 31A–4–33, as amended, creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant.

In the case before us, the appellee attempted to refute this conclusive presumption on a theory of mistake.[7] Although we observed in *Dorsey*, 157 W.Va. at 873, 205 S.E.2d at 691, that the presumption could be rebutted by "competent evidence," this Court has never specifically addressed the standard of proof necessary to overcome the effect of the joint accounts.

As a general rule, issues in a civil case are to be determined in accordance with the preponderance of the evidence. *See* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 11.1(A) (2nd ed. 1986); *McCormick on Evidence* § 339 (E. Cleary 3d ed. 1984); 9 J. Wigmore, *Evidence in Trials at Common Law* § 2498 (J. Chadbourn rev. ed. 1981). *See also* 30 Am.Jur.2d *Evidence* § 1163, at 337 (1967). However, in certain classes of cases, such as those involving either charges of fraud or undue influence, or of mistake sufficient to justify reformation of a contract or written instrument, the strict-er standard of clear and convincing evidence is necessary. *See McCormick on Evidence* § 340, at 960–61 (E. Cleary 3d ed. 1984); 9 J. Wigmore, *Evidence in Trials at Common Law* § 2498, at 424 (J. Chadbourn rev. ed. 1981). *See also* 30 Am. Jur.2d *Evidence* § 1167, at 344–46 (1967).

There are many jurisdictions which require clear and convincing evidence to overcome the presumption that the surviving joint tenant owns the funds remaining in a joint account at the death of the other party to the account. Several states have enacted statutes which specifically provide that funds remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent "unless there is clear and convincing evidence of a different intention at the time the account is created."[8]  Ariz.Rev.Stat.Ann. § 14–6104 (1974); Colo.Rev.Stat. § 15–15–104 (1987); Ind.Code Ann. § 32–4–1.5–4(a) (Burns 1976); Me.Rev.Stat.Ann. tit. 18–A, § 6–104(a) (1981); Minn.Stat.Ann. § 528.05 (West 1985);[9] N.J.Stat.Ann. § 17:16I–5 (West 1984); N.M.Stat.Ann. § 45–6–104 (1989 Repl.); 20 Pa.Cons.Stat.Ann. § 6304 (Purdon Supp.1990); Utah Code Ann. § 75–6–104 (1978); Wash.Rev.Code Ann. § 30.22.100 (1986); Wis.Stat.Ann. § 705.04 (West Supp.1990). Other states have joint

---

**7.** The complaint filed by the appellees alleged that the appellant had committed a constructive fraud and had exercised undue influence over Mrs. Folio. However, at trial, the trial court determined that there was insufficient evidence to support the theory of constructive fraud, and permitted the appellees to proceed at trial on a theory of mistake. The appellant did not object to the trial court's ruling that the appellant could submit the issue of mistake to the jury when only fraud had been alleged in the complaint.

In the post-trial motions and on appeal, however, the appellant has raised the issue that in all averments of mistake, the circumstances constituting mistake must be stated with particularity in accordance with *W.Va.R.C.P.* 9(b). We pointed out, in *Hager v. Exxon Corp.,* 161 W.Va. 278, 283, 241 S.E.2d 920, 923 (1978), that the rationale for the requirements of Rule 9(b) is to permit the party charged with fraud or mistake the opportunity to prepare a defense. Since the appellant in the case before us was charged with fraud in the complaint, the trial court believed that there was no surprise regarding how the case was presented, and that the testimony of witnesses from the bank "went directly to the issue of whether there was a mistake." The appellant has not alleged how this has prejudiced her case. Nor does it appear from the record that there was any surprise or that the appellant would have called different witnesses had the issue of mistake been initially pled.

**8.** This language is modeled after Section 6–104(a) of the Uniform Probate Code.

**9.** Minn.Stat.Ann. § 528.05 differs to some degree from the other statutes. That statute provides that the funds belong to the surviving joint tenant "unless there is clear and convincing evidence of a different intention, or there is a different disposition made by a valid will as herein provided, specifically referring to such account."

account statutes which provide that the creation of a joint account will be *prima facie* evidence of ownership in the surviving joint tenant "in the absence of fraud or undue influence, or other clear and convincing evidence" to the contrary. Conn.Gen. Stat.Ann. § 36–3 (West Supp.1990); *see also* Fla.Stat.Ann. § 658.56 (West 1984); Tenn.Code Ann. § 45–2–703(e)(4) (Supp. 1990) (specifically provides that the presumption "may be rebutted by clear and convincing evidence presented in the course of legal or equitable proceedings.")

Furthermore, some states which have statutes that do not specify the standard of evidence necessary to overcome the presumption of ownership in the surviving joint tenant have also held that the presumption may be overcome by clear and convincing evidence. *See generally Jacques v. Jacques*, 352 Mich. 127, 134–38, 89 N.W.2d 451, 455–57 (1958) (clear and persuasive proof); *In re Estate of Hysinger*, 785 S.W.2d 619, 624 (Mo.Ct.App.1990) (evidence must be clear, cogent and convincing);[10] *In re Estate of Thompson*, 66 Ohio St.2d 433, 423 N.E.2d 90 (1981) (clear and convincing evidence of a different intention at the time the account is created); *Wagner v. Wagner*, 83 S.D. 565, 163 N.W.2d 339 (1968) (clear and satisfactory evidence).

■ We agree with other jurisdictions that the presumption of ownership in the surviving tenant at the death of the other party to the joint account can only be overcome by clear and convincing evidence. The stricter standard of proof is necessary because of the nature and effect of the joint account. The parties to a joint account sign a signature card in order to establish the joint account with survivorship. The signature card and the deposit represent a tripartite contract between the bank and the parties to the joint account, and between the parties themselves, the terms of which are clear and unambiguous.[11] As we recognized in *Dorsey, supra*, under the provisions of *W.Va.Code*, 31A–4–33 [1969], in the absence of fraud, mistake or other equally serious fault, there is a conclusive presumption that the joint account with survivorship is what the donor depositor intended. Since the signature card and deposit speak the final agreement entered into by the donor depositor and are regarded as the strongest evidence of the donor depositor's intent, a party seeking to overcome the presumption created by the terms of the joint account, on the basis of fraud, mistake or other equally serious fault, must produce clear and convincing evidence.[12]

■ Thus, we conclude that a party seeking to prove fraud, mistake or other equally serious fault must do so by clear and convincing evidence and if such fraud, mistake or other equally serious fault is not so proven, then the surviving joint tenant may rely on the conclusive presumption created by *W.Va.Code*, 31A–4–33, as amended, that the donor depositor of a joint and survivorship account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant to establish such gift. Since the trial court erred in instructing the jury on the burden of proof, we shall remand this case for a new trial, consistent

**10.** Michigan and Missouri have statutes similar to *W.Va.Code*, 31A–4–33 [1969] in that they specifically recognize that the funds in the joint account become the property of such persons as joint tenants. *See* Mich.Comp.Laws Ann. § 487.703 (West 1987); Mo.Ann.Stat. § 362.470 (Vernon Supp.1990).

**11.** *See In re Estate of Gillespie*, 462 Pa. 455, 341 A.2d 471 (1975); *Pagano v. Walker*, 539 P.2d 452 (Utah 1975).

**12.** We have traditionally recognized that the evidence required to establish mistake in an unambiguous written instrument must be clear and convincing. *See Edmiston v. Wilson*, 146 W.Va. 511, 527, 120 S.E.2d 491, 500 (1961); *Hanly v. Harmison*, 89 W.Va. 608, 109 S.E. 742 (1921); *Melott v. West*, 76 W.Va. 739, 86 S.E. 759 (1915); *Smith v. Owens*, 63 W.Va. 60, 59 S.E. 762 (1907); *Knowlton v. Campbell*, 48 W.Va. 294, 37 S.E. 581 (1900); *Robinson v. Braiden*, 44 W.Va. 183, 28 S.E. 798 (1897); *Jarrell v. Jarrell*, 27 W.Va. 743 (1886); *Allen v. Yeater*, 17 W.Va. 128 (1880); *Western Mining & Manufacturing Co. v. Peytona Cannel Coal Co.*, 8 W.Va. 406 (1875).

with our ruling herein.[13]

Reversed and remanded.

**13.** The other assignments of error raised by the appellant are without merit, and accordingly, we shall not address them in this opinion.