422 S.E.2d 484

Neola Williams WEBB, Administratrix with the Will Annexed of Fred Williams, and Emma Carry Williams (Reveley), Individual, Plaintiffs Below, Appellees,

v.

Wilbert WILLIAMS, Defendant Below, Appellant.

No. 20484.

Supreme Court of Appeals of West Virginia.

Submitted May 6, 1992.

Decided July 10, 1992.

---

8

Clark B. Frame, William L. Frame, Wilson, Frame & Metheny, Morgantown, for appellees.

George A. Markusic, Morgantown, for appellant.

PER CURIAM:

This is an appeal by Wilbert Williams from a July 11, 1991, final order of the Circuit Court of Monongalia County which held, subsequent to a jury trial, that Mr. Williams was not entitled to the entirety of the proceeds of a bank account which he and his father had held jointly, with a right of survivorship, prior to his father's death. The appellant contends that the trial court erred in denying his motion for a directed verdict and by improperly instructing the jury. We find no reversible error and affirm the decision of the Circuit Court of Monongalia County.

I.

Fred Williams, deceased father of the appellant, was a resident of Osage, Monongalia County, West Virginia. He was the father of two natural children, the appellant Wilbert Williams and the appellee Neola Williams Webb. After Mr. Williams'

death on March 14, 1990, a question arose regarding the ownership of bank accounts which had been held jointly, with a right of survivorship, by the decedent and his son, Wilbert Williams.[1] The decedent's will divided the estate equally among three individuals, including the appellant, Neola Williams Webb, and Emma Carry Reveley, the mother of the decedent's two children.[2] Thus, an issue was raised regarding whether the jointly held bank accounts belonged exclusively to the appellant or to the estate of the decedent to be divided among the three individuals named in his will.

At trial, the appellees, Neola Williams Webb and Emma Carry Reveley, argued that they were entitled to relief based upon the decedent's misunderstanding of the legal effect of the creation of the joint account with right of survivorship. The appellees further contended that the decedent had not intended the appellant to receive the proceeds to the exclusion of the appellees. Evidence was presented regarding the decedent's understanding of the joint accounts and the legal effect thereof. The appellant presented evidence regarding the decedent's 1978 conveyance of his residence in Osage, West Virginia, to his two children with right of survivorship. That deed was prepared by an attorney in Morgantown who is now deceased. The appellant contends that the conveyance with the right of survivorship is evidence of the decedent's familiarity with the concept of right of survivorship, its application, and its ramifications. The appellant also introduced the testimony of an officer of Citizens Bank of Morgantown who had assisted the decedent in his banking transactions.

Ms. Margaret Krushansky testified that the decedent named his son as the joint tenant each time he renewed his certificates of deposit. In answer to a question regarding whether she believed that the decedent "knew what he was doing with his accounts," she testified that it was her judgment that he did.

The appellees, however, introduced testimony by a head teller with Citizens Bank, Ms. Arlene DeLauder, who stated that it had not been the policy of the bank, until very recently, to explain in detail the nature of a joint account with the right of survivorship. Other witnesses for the appellees emphasized the decedent's devotion to both his children and his desire for them to share equally in his estate. The appellees also introduced evidence that the decedent had transferred the funds from savings bonds to the Citizens Bank account. The bonds had been in the name of the decedent or Neola Williams Webb, but the funds were thereafter placed into the joint account with the appellant.[3] Evelyn Brown, a witness for the appellees, also testified that she had participated in a discussion with the decedent regarding his decision to place one of his children's names on the account. The decedent had informed her that he thought that it was necessary to place someone else's name on the account to prevent it from "going to the State." The appellant also testified that his father never told him that the appellant's name was to be placed on the accounts so that the appellant would receive the proceeds. In fact, the appellant testified as follows: "But, I had no intentions of keeping all of that money. I was

1. The decedent had been employed as a coal miner and had saved in excess of $175,000, according to the calculations of the appellant. The appellees allege that the decedent's assets may total as much as $204,000. The decedent kept those funds in certificates of deposit and a savings account at Citizens Industrial Financing Corporation, now Citizens Bank of Morgantown, to the date of his death on March 14, 1990, at the age of 87.

2. Although Ms. Reveley was referred to in the decedent's will as "my beloved wife," Mr. Williams and Ms. Reveley were never actually married. Ms. Reveley resided with the decedent

from 1935 to 1951, during which time the appellant and appellee Ms. Webb were born. Ms. Reveley then moved to Pittsburgh, Pennsylvania, in 1951, taking the children with her. There was very little contact among the parties until the early 1970's. Ms. Reveley is now paralyzed from the effects of a stroke and has resided in a nursing home since 1989.

3. The impetus behind the transfer of assets into a "jumbo account" at Citizens Bank was apparently to generate greater interest than a savings account or certificate of deposit of less than $100,000.

going to share it with the whole family. The situation as now, she caused it all. So that's it." [4]

This issue was tried twice, and both juries found that the decedent was laboring under the mistaken impression that all his assets, even those in the joint account with his son, would be distributed equally among his "wife" Emma Carry Reveley, his son, and his daughter. The first trial was conducted on December 2 and 3, 1990. During that trial, the court's instructions explained that the plaintiff's evidentiary burden was proof by a "preponderance of the evidence." Subsequent to this Court's decision in *Lutz v. Orinick*, 184 W.Va. 531, 401 S.E.2d 464 (1990), adopting the "clear and convincing evidence" standard where "[a] party seek[s] to prove fraud, mistake or other equally serious fault ...," the lower court granted a new trial, conducted on June 6 and 7, 1991. *Id.* at 535, 401 S.E.2d at 468 and Syl. Pt. 2. In conformity with the *Lutz* opinion, the lower court instructed the jury that the mistake must be proved by "clear and convincing evidence." The jury again found in favor of the appellees.

The appellant raises three assignments of error: 1) the lower court erred by denying the appellant's motion for a directed verdict; 2) the lower court erred in its instruction to the jury as to mistake of law, and 3) the lower court erred by failing to grant appellant's instruction regarding unilateral mistake of law.

## II.

■ The appellant first contends that the evidence presented by the appellees was insufficient to establish that the decedent had made a mistake in creating joint bank accounts. The trial court concluded that the issues should be determined by the jury. In syllabus point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), we explained the following:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; 2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

The appellees in the present case introduced extended testimony regarding the decedent's desire to leave his estate equally to his "wife" and his two children. Testimony was also presented indicating that the bank may not have explained in full detail the legal effect of a joint account with right of survivorship. Moreover, testimony was introduced regarding the decedent's incorrect assumption that his estate would escheat to the State if he failed to place another name on his account. The record also reflects that the decedent was of advanced age, of limited education, and suffered from hearing loss and poor eyesight. At the very least, this evidence suggests some degree of confusion of the issues and justifies the lower court's conclusion that the jury should be permitted to determine the appropriate resolution. Thus, we believe that the lower court properly denied the appellant's motion for a directed verdict.

■ The appellant also contends that the jury was improperly instructed regarding the decedent's possible mistake. Specifically, the appellant claims that the lower court erred by refusing an instruction which would have further explained the issue of unilateral mistake of law. The appellant further contends that the lower court erred by informing the jury that they could find for the appellees if they believed, by clear and convincing evidence, that the decedent was, at the time of the creation of the joint bank account and certificates of deposit, operating under the mistaken belief that

---

**4.** The appellant and his sister even discussed the need to obtain a death certificate to present to the bank. A subsequent dispute arose between the two, and the appellant decided to claim all the proceeds as his own.

the proceeds would be distributed to the beneficiaries of his estate. The appellant contends that a mistake of law is no excuse and that the appellant is entitled to the proceeds absent "fraud, mistake or other equally serious fault."

■ West Virginia Code § 31A–4–33 (1992) governs the issue of joint bank accounts with the right of survivorship.[5] We have examined that statute on numerous occasions and have explained that the statute "creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant." Syl. Pt. 2, in part, *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974).

In *Dorsey*, we addressed the issue of the intention of a donor/depositor and explained that the element of intent had been considered by other courts addressing this issue. *Id.* at 872, 205 S.E.2d at 691. In the context of *Dorsey*, however, the issue was being determined while the depositor was still living and while her intent could obviously be ascertained. While the intent of a depositor is not so readily ascertainable subsequent to his death, we refuse to remove the element of intent from the consideration of the jury in a case such as the present one.[6]

The appellant attempts to interpret the *Dorsey* line of opinions by contending that when referring to a "mistake" as being cause for the rebutting of presumption of a causa mortis gift, we could not have meant a mere mistake of law. Rather, the appellant contends, we must have intended such "mistake" to be accompanied by some fault such as fraud or undue influence. The appellant then proceeds to evaluate contractual concepts of mutual mistakes of fact, unilateral mistakes of fact accompanied by inequitable conduct, and mistakes of law. We believe that such discussion is unnecessary in light of our explicit statements of the law regarding the presumption of ownership as enunciated in *Dorsey* and its progeny. While the appellant argues that the word "mistake" must be construed more narrowly, we do not feel constrained to such interpretation.

The appellant also places great emphasis on a Missouri case, *In re Estate of Hysinger*, 785 S.W.2d 619 (Mo.App.1990), in which the ownership of jointly held bank accounts was questioned. The decedent in that case apparently made the same type of "mistake" alleged in this case, and the appellate court held that a "mistake as to the legal

**5.** West Virginia Code § 31A–4–33 provides as follows:

If any deposit in any banking institution be made by any person describing himself in making such deposit as trustee for another, and no other or further notice of the existence and terms of a legal and valid trust than such description shall be given in writing to the banking institution, in the event of the death of the person so described as trustee, such deposit, or any part thereof, together with the interest thereon, may be paid to the person for whom the deposit was thus stated to have been made.

When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants; and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them; and such payment and the receipt or the acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge for all payments made on account of such deposit, prior to the receipt by the banking institution of notice in writing, signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof. Prior to the receipt of such notice no banking institution shall be liable for the payment of such sums.

The second sentence of the second paragraph was added by amendment effective July 1, 1991, but it does not alter the impact of the statute in this case.

**6.** Our discussion in *Dorsey* regarding the role of intent in the attempt to rebut the presumption of a gift centers upon the intent of a depositor who is still alive and able to testify regarding his intent. We see no reason to prohibit the introduction of competent evidence of the depositor's intent even after the death of the depositor.

effect of the establishment of such a statutory joint tenancy or a mistake regarding the words and markings on a signature card affords no relief by way of rescission of the joint accounts." 785 S.W.2d at 626. The *Hysinger* court concluded that even though Mr. Hysinger may have misunderstood the legal effect of joint tenancy, those misunderstandings did not constitute a "mistake" sufficient to rebut the presumption of a gift. *Id.*

We do not adopt the reasoning of *Hysinger* and decline to remove the intent of the depositor from consideration in cases of this nature. We further decline to alter the plain meaning of our previous statements in *Dorsey* that evidence of "fraud, mistake or equally serious fault" may rebut the presumption that the depositor intended a gift. We find that the evidence clearly supports the jury's conclusion that a "mistake" occurred, and we place no further limitations on the nature of the "mistake" which must be proven. Evidence of intent of the depositor, as presented in this case, may be used to prove the mistake. The jury concluded that the depositor in this case mistakenly believed that his money would escheat to the State if he failed to place the name of one of his children on the account. The evidence also supported the jury's conclusion that the decedent desired the three individuals to share equally in his estate upon his death.

Based upon our review of the evidence in this matter, we reiterate our previously holdings in the *Dorsey* line of opinions and further hold that the mistake identified by the jury in the present case is sufficient to render the funds in question a part of the decedent's estate rather than the exclusive property of the appellant. Further, we find no reversible error in the lower court's determinations regarding the instructions given to the jury. The lower court properly instructed the jury regarding the issue of a joint account with the right of survivorship and the evidence necessary to rebut the presumption that the donor/depositor intended a causa mortis gift to his son of the proceeds remaining after his death. Consequently, we hereby affirm the decision of the Circuit Court of Monongalia County.

Affirmed.