469 S.E.2d 1

**Kermit BARNHART and Gayle
Jean Johnson, Plaintiffs
Below, Appellees,**

v.

**John REDD, Defendant Below, Appellant.**

No. 22878.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 10, 1996.

Decided March 1, 1996.

William D. Stover, Beckley, for Appellees.

F. Winston Polly, III, Beckley, for Appellant.

PER CURIAM:

John Redd appeals the decision of the Circuit Court of Raleigh County finding that he was not entitled to the proceeds of a certificate of deposit that had been jointly titled with right of survivorship in his name and the name of Ida Calloway, who deposited the money and is now deceased. On appeal, Mr. Redd argues that because he did not have a fiduciary or confidential relationship with Mrs. Calloway, the circuit court incorrectly required him to prove that the funds were, in fact, a *bona fide* gift. Because the record shows that Mr. Redd considered himself to have a confidential relationship with Mrs. Calloway and, therefore, required to prove that the certificate of deposit was a *bona fide* gift, we affirm the decision of the circuit court.

## I.

### FACTS AND BACKGROUND

On August 25, 1982, Ida Calloway and Henry Calloway, her husband, executed wills, each naming the other as heir and each naming Mr. Redd as executor of the respective estates.[1] Both wills stated that if the primary beneficiary was deceased, the appellees, Kermit Barnhart who had been raised by the Calloways and Gayle Jean Johnson who was the Calloways' granddaughter, would be the beneficiaries.

During Mrs. Calloway's life, Mr. Redd assisted her by providing transportation to and assisting her at the bank where Mrs. Calloway conducted her business. As her health worsened, Mr. Redd, outside the presence of Mrs. Calloway, conducted banking transactions under Mrs. Calloway's authorization and direction. Neither Mr. nor Mrs. Calloway had granted Mr. Redd a power of attorney. Mr. Calloway did not participate in any of the money management transactions either before or after his wife's death.

On August 25, 1982, the same day the Calloways signed their wills, Mrs. Calloway put Mr. Redd's name on her checking and her savings accounts.[2] The saving account was titled in the names of Ida Calloway, Henry Calloway, Gayle Jean Johnson and John Redd. At a later date, Mrs. Calloway purchased a certificate of deposit of about twenty thousand dollars ($20,000) that was titled in the names of Ida Calloway, Henry Calloway, Gayle Jean Johnson and John Redd. On November 14, 1985, Mrs. Calloway purchased a second certificate of deposit in the amount of ten thousand dollars ($10,000) that was titled only in her and Mr. Redd's names. Both certificates of deposit indicated that title holders had a right of survivorship. During Mrs. Calloway's life, Mr. Redd never used any funds in Mrs. Calloway's accounts for his personal needs.

---

1. Under Mrs. Calloway's will, Ms. Johnson, her granddaughter, was to receive certain rings.

2. Mrs. Calloway sought Mr. Redd's assistance after the death of her aunt who had been helping her.

On April 3, 1986, Mrs. Calloway died, survived by her husband. After Mrs. Calloway's death, Mr. Redd took possession of the $10,000 certificate of deposit and the interest paid thereon. Apparently even though all of Mrs. Calloway's accounts were jointly titled with Mr. Redd, Mr. Redd considered only the $10,000 certificate of deposit as a personal gift.[3]

When Mr. Calloway's health problems increased in the summer of 1986, a committee was appointed to oversee his needs and affairs. Because of an apparent dispute about what funds were available from Mrs. Calloway's estate to pay for Mr. Calloway's needs, Mr. Redd testified that he retained F. Winton Polly, III, Esq. to assist him in that dispute concerning the funds available to Mr. Calloway's committee. Mr. Redd paid Mr. Polly $1,000 for legal services. Although Mr. Redd was named the executor under Mr. Calloway's will, after Mr. Calloway's death on September 25, 1986, the money remaining in the account for Mr. Calloway was not returned to Mr. Redd.[4] There is no dispute concerning the distribution of the funds that remained in the custodial account after·Mr. Calloway's death.

On September 8, 1992, Ms. Johnson and Mr. Barnhart filed suit in the circuit court against Mr. Redd asserting the following: (1) The $10,000 certificate of deposit and interest thereon, which Mr. Redd had taken as his own, should have been included in Mrs. Calloway's estate; (2) Mr. Redd had wrongly distributed $2,000 to persons not named in Mrs. Calloway's will[5]; and, (3) Mr. Redd had wrongly used estate funds to pay for his furniture replacement and certain legal fees[6]. After a bench trial, the circuit court found that Mrs. Calloway had entrusted her assets to Mr. Redd for a limited purpose, that a fiduciary or confidential relationship existed between Mrs. Calloway and Mr. Redd, that Mr. Redd had not proven that the $10,000 certificate of deposit was an *inter vivos* gift, that about $2,000 was distributed to persons who were not named beneficiaries under the will and that the furniture payment of about $950 to himself and the $1,000 legal payment to Mr. Polly were not proper expenditures for the estate of Mrs. Calloway. The circuit court noted that "[i]nasmuch as the beneficiaries of Henry Calloway [the appellees] do not seek relief from each other, the Court will leave them where it finds them."

Mr. Redd appealed the circuit court's ruling to this Court asserting that because no fiduciary or confidential relationship existed between Mrs. Calloway and him, the $10,000 certificate of deposit passed to him under W.Va.Code 31A–4–33(b) (1994), which deals with jointly titled bank accounts. *See infra* p. 7 for text of W.Va.Code 31A–4–33(b) (1994).[7]

3. At the reading of Mrs. Calloway's will, Mr. Redd, on advice of counsel, failed to mention the $10,000 certificate of deposit which he claims in this action. Several witnesses at the reading of Mrs. Calloway's will testified that Mr. Redd said that he had been paid and the money in the bank was not his and that he wanted the appellees to have the money. Apparently, the money being discussed was in the jointly titled checking account, saving account or the other certificate of deposit.

4. After Mr. Calloway's death, Mr. Redd transferred the remaining funds of Mr. Calloway's committee into an account for Mr. Calloway's estate. However, the funds were transferred back into the committee's account and Mr. Redd did not use any of Mr. Calloway's estate funds to pay any bills. Mr. Redd made no distribution from Mr. Calloway's estate.

5. As executor of Mrs. Calloway's estate, Mr. Redd distributed $500 to Tony Washington, $500 to Delphine Washington, who were the brother and sister of Ms. Johnson and about $1,000 to himself. The record does not indicate the Washingtons' relationship to the Calloways. Although Mr. Redd made distributions from Mrs. Calloway's estate to the appellees, no challenge concerning these distributions was made.

6. Mr. Redd, as executor of Mrs. Calloway's estate, paid various expenses including about $950 to himself for furniture. Mr. Redd testified that Mrs. Calloway had burned a hole in either his new sofa or loveseat and he used estate "funds to replace" both pieces. However, the receipt for the furniture was dated March 12, 1986, about three weeks before Mrs. Calloway's death. Mr. Redd said that he either paid the furniture bill or reimbursed himself in the summer of 1986.

In addition to the $1,000 legal fee Mr. Redd paid Mr. Polly, he also paid John Rist, Esq., $410 for legal services for the administration of Mrs. Calloway's estate.

7. Because Mr. Redd limited his appeal of the circuit court's decision to the question of the ownership of the $10,000 certificate of deposit

## II.

### STANDARD OF REVIEW

■ In *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995) (a bench trial), we applied a two-prong deferential standard of review when reviewing a circuit court's findings and conclusions. We said: "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review. *See* syl. pt. 1, *Burnside v. Burnside,* No. 22399, [194] W.Va. [263], 460 S.E.2d 264 (Mar. 24, 1995)." *Phillips v. Fox,* 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995).

We noted that "[a]ppellate oversight is therefore deferential, and we review the trial court's findings of fact following a bench trial, including mixed fact/law findings, under the clearly erroneous standard." *Phillips v. Fox,* 193 W.Va. at 662, 458 S.E.2d at 332. Under the clearly erroneous standard, a reviewing court "on the entire evidence" must be "left with the definite and firm conviction that a mistake has been committed." *Phillips v. Fox,* 193 W.Va. at 661, 458 S.E.2d at 331, *quoting, United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948).

On appeal, Mr. Redd maintains that the circuit court's finding of a fiduciary or confidential relationship between Mrs. Calloway and him was wrong, and, therefore, he should not have been required to prove that the funds were a *bona fide* gift.[8] Given our standard of review, we have considered the entire record below to determine if the circuit court's finding was clearly erroneous.[9]

## III.

### DISCUSSION

W.Va.Code 31A–4–33 (1994), dealing with jointly registered bank accounts provides, in pertinent part:

(b) When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants. All such deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them.[10]

*See* also W.Va.Code 36–1–20 (1981) providing that multiple owners linked together with the disjunctive "or" on a instrument of ownership of intangible personal property "shall be held as joint tenants with the right of survivorship, unless expressly stated otherwise."

■ In Syl. pt. 2, *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1974) we stated that W.Va.Code 31A–4–33 "creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivor-

---

and any interest thereon, our discussion in this case is limited to that issue, and therefore, we do not discuss the rest of the circuit court's decision.

8. On appeal, Mr. Redd's challenge is limited to the predicate concerning the existence of a fiduciary or confidential relationship. Mr. Redd does not challenge the resultant legal concept that a presumption of constructive fraud is built on that relationship. Neither does he challenge the circuit court's decision that the type of evidence needed to rebut that presumption was not presented.

9. On appeal, Mr. Redd also maintains that the circuit court erred in failing to dismiss the complaint based on the statute of limitations because the complaint was not filed within two years of the will's probate or the estate's final settlement. Although Mr. Redd raises the statute of limitation issue, he failed to provide any argument or evidence on the issue. We note that Mr. Redd never raised the statute of limitation issue below and we decline to address it on appeal. *See Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Shrewsbury v. Humphrey,* 183 W.Va. 291, 395 S.E.2d 535 (1990).

10. Although this Code section was amended after the institution of this suit, the pertinent language has remained unchanged.

ship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant." However, in *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979), we noted that fraud could vitiate the conclusive presumption of a gift arising from the creation of a joint account. In *Kanawha Valley Bank v. Friend*, the joint surviving tenant had, by using his power of attorney, cashed the decedent's treasury bills and placed them into a bank account that was titled jointly in his and the decedent's name. After the decedent's death, the joint surviving tenant claimed ownership of the funds in the joint bank account. Based on the use of the power of attorney and the lack of knowledge by the decedent of the funds' transfer to the joint account, we found that the presumption of a gift created by W.Va.Code 31A–4–33 does not apply when a fiduciary or confidential relationship exists between the joint tenants. Rather, the presence of a fiduciary or confidential relationship creates a presumption of fraud which requires the person benefiting from the account's creation to prove that the funds were, in fact, a gift. The Syllabus of *Kanawha Valley Bank v. Friend*, states:

> A presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift.

*See Smith v. Smith*, 168 W.Va. 511, 512, 285 S.E.2d 145, 146 (1981) *(per curiam )* (finding insufficient evidence of a fiduciary relationship based on the help given by the joint surviving tenant to the decedent and "some evidence showing that the appellant's name was placed on the account to afford her access to the funds in the event that Mrs. Price [the decedent] got sick"); *Dillon v. Dillon*, 178 W.Va. 531, 362 S.E.2d 759 (1987) (finding a confidential relationship between a widow and her brother-in-law, on whom she relied because of his superior business knowledge); *Vercellotti v. Bowen*, 179 W.Va. 650, 371 S.E.2d 371 (1988) *(per curiam )* (finding sufficient evidence for a jury to con-

clude that a confidential relationship existed between a mother and daughter in which the mother was aged, ill, isolated and had limited ability in the English language); *Koontz v. Long*, 181 W.Va. 800, 384 S.E.2d 837 (1989) *(per curiam )* (finding sufficient evidence for a jury to conclude the existence of a fiduciary relationship); *Yaromey v. King*, 182 W.Va. 126, 386 S.E.2d 493 (1989) *(per curiam )* (finding sufficient evidence of a fiduciary relationship to instruct the jury on fiduciary duties and presumption of constructive fraud); *Smallridge v. Sipe*, 185 W.Va. 135, 405 S.E.2d 465 (1991) *(per curiam )* (finding summary judgment improper because of a factual question concerning whether a confidential relationship existed); *Webb v. Williams*, 188 W.Va. 7, 422 S.E.2d 484 (1992) *(per curiam )* (finding the record sufficient to support a jury finding of clear and convincing evidence of a mistake to rebut the presumption of W.Va.Code 31A–4–33).

In *Lutz v. Orinick*, 184 W.Va. 531, 401 S.E.2d 464 (1990), we held that clear and convincing evidence of fraud, mistake or other equally serious fault was necessary to overcome the conclusive presumption of ownership in the surviving joint tenant under W.Va.Code 31A–4–33. Syl. pt. 2 of *Lutz v. Orinick*, states:

> A party seeking to prove fraud, mistake or other equally serious fault must do so by clear and convincing evidence and if such fraud, mistake or other equally serious fault is not so proven, then the surviving joint tenant may rely on the conclusive presumption created by *W.Va.Code*, 31A–4–33, as amended, that the donor depositor of a joint and survivorship account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant to establish such gift.

We noted that this strict standard of proof was necessary "because of the nature and effect of the joint account," which is "a tripartite contract between the bank and the parties to the joint account, and between the parties themselves, the terms of which are clear and unambiguous. [Footnote omitted.]" *Lutz v. Orinick*, 184 W.Va. at 535, 401 S.E.2d at 468. *See Lutz v. Orinick*, 184

W.Va. at 533 n. 5, 401 S.E.2d at 466 n. 5 (noting that *Kanawha Valley Bank v. Friend* "did not address the issue of the burden necessary to overcome the conclusive presumption of ownership in the surviving joint tenant created by *W.Va.Code*, 31A–4–33 [1969]").

■ In this case, Mrs. Calloway sought Mr. Redd's assistance after the death of the person who had been helping her. Mrs. Calloway placed Mr. Redd's name on her checking and saving accounts when she named Mr. Redd as executor in her will. Later when Mrs. Calloway purchased certificates of deposit, she also placed his name on them. During Mrs. Calloway's life, Mr. Redd always followed her directions and never exercised any independent control over any of the jointly titled accounts, including the $10,000 certificate of deposit he claimed after her death. Although at trial Mr. Redd testified that he understood that a will takes effect only at death and that Mrs. Calloway's naming him executor did not create either a fiduciary or confidential relationship, Mr. Redd did not have that understanding during his relationship with Mrs. Calloway. Rather, Mr. Redd believed that as named executor and one who helped with banking for Mrs. Calloway, he was supposed to "help her" in a custodial capacity.[11]

Generally to overcome the "conclusive presumption created by *W.Va.Code*, 31A–4–33" the existence of a fiduciary or confidential relationship must be proven by the party seeking to prove such a relationship "by clear and convincing evidence." Syl. pt. 2, in part, *Lutz v. Orinick*. After the relationship is proven, a presumption of constructive fraud

arises requiring the person benefitting from the creation of the jointly titled account to "bear the burden of proving that the funds were, in fact a *bona fide* gift." Syl., in part, *Kanawha Valley Bank v. Friend.*

■ Mr. Redd gave the following testimony concerning the reason why his name was placed on the $10,000 certificate of deposit:

> Later on, the second certificate of deposit, she [Mrs. Calloway] put mine and her name [sic] only on it. I asked her why was she—she said, [sic] I am running my business, let me do it the way I want to do it. [sic] So that's what I did.[12]

Mr. Redd's testimony on this matter was insufficient to establish that Mrs. Calloway had given him the funds in the account or that she intended him to receive the funds at her death. During Mrs. Calloway's life, Mr. Redd never used the funds for his personal matters and Mrs. Calloway's will "bequeath[ed] all my monies to my beloved husband" and if Mr. Calloway predeceased her, "the money in the Certificate of Deposit [was to go] to Kermit Thomas Barnhalt [sic] and Gale [sic] Jean Johnson, to share equally; the money in the checking" and savings accounts was to go Ms. Johnson. There is nothing in the record of the case *sub judice* to substantiate that the funds were, in fact, a *bona fide* gift from Mrs. Calloway to Mr. Redd.

Given the relationship between Mr. Redd and Mrs. Calloway along with Mr. Redd's acknowledgment that he perceived his relationship with Mrs. Calloway to be custodial, we find that the circuit court did not clearly err in concluding that there was clear and

---

11. At trial, after Mr. Redd denied that he was serving in a custodial capacity on Mrs. Calloway's accounts, he acknowledged the following exchange had occurred in his April 19, 1991 deposition:

> Question (Mr. Sparacino, Lawyer for Appellees):
> "Did you—and I believe you've testified that Mrs. Calloway placed you on certain accounts as would apply to Mr. Calloway's estate. You were listed on certain bank accounts, checking accounts, certificates of deposit at the time of the death of Henry Calloway and Ida Calloway, were you not?"
> Answer (Mr. Redd):
> "I stated that my name was placed on all of their monies in the bank."

Question:
> "And that was placed there in a custodial capacity to allow you to help them manage their affairs; is that correct?"
> Answer:
> "Yes, I believe so. That's what I took it to be, to help her, because she lived at Rhodell and a lot of things needed to be did [sic] and I was over here in Beckley and I could do them for her."

12. Because a bench trial was held on this matter, we assume that the circuit court properly applied the Dead Man Statute, W.Va.Code 57–3–1 (1937). For a recent discussion of the act, *see Meadows v. Meadows*, 196 W.Va. 56, 468 S.E.2d 309 (1996).

convincing evidence of a confidential relationship, which was sufficient to overcome "the conclusive presumption created by *W.Va. Code,* 31A–4–33, as amended, that the donor depositor of a joint and survivorship account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant to establish such gift." Syl. pt. 2, in part, *Lutz v. Orinick.*

For the above stated reasons, the decision of the Circuit Court of Raleigh County is affirmed.

Affirmed.

McHUGH, Chief Justice, and CLECKLEY, Justice, dissenting:

We believe that *Kanawha Valley Bank v. Friend,* 162 W.Va. 925, 253 S.E.2d 528 (1979), should be overruled and we therefore respectfully dissent.