**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2016 Term**

_____

No. 14-1060
_____

**FILED**

**February 25, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**POLLY SUE PICKENS,**
**Defendant Below, Petitioner**

**v.**

**MURL LOUISE TRIBBLE and**
**JANET PEARL SARGENT,**
**Plaintiffs Below, Respondents**

_____

Appeal from the Circuit Court of Mason County
The Honorable David W. Nibert, Judge
Civil Action No. 06-C-178

**AFFIRMED**
_____

Submitted: February 10, 2016
Filed: February 25, 2016

Dwight J. Staples, Esq.                                      Ancil G. Ramey, Esq.
Gail Henderson-Staples, Esq.                          Steptoe & Johnson, PLLC
Henderson, Henderson & Staples, L.C.          Huntington, West Virginia
Huntington, West Virginia                               Counsel for the Respondents
Counsel for the Petitioner

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. "A presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift." Syl., *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979).

2. "The personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the advantage of those interested in it and to act on their behalf. In the discharge of this duty, the executor or administrator of a decedent's estate is held to the highest degree of good faith and is required to exercise the ordinary care and reasonable diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs." Syl. pt. 1, *Latimer v. Mechling*, 171 W.Va. 729, 301 S.E.2d 819 (1983).

**Chief Justice Ketchum**:

The litigants in this matter are three adult sisters, Polly Pickens, Murl Tribble and Janet Sargent, involved in a dispute over the Estate of their deceased mother, Louise Pickens (the "mother").

Polly Pickens ("Pickens"), the petitioner and defendant below, appeals from the September 5, 2014, order of the Circuit Court of Mason County which denied her motion for a new trial. During the trial, Tribble and Sargent, the respondents and plaintiffs below, asserted that, from the death of their father in 1988 to the death of their mother in 2005, Pickens had a fiduciary relationship with their mother. Pickens allegedly breached that relationship through the creation of various joint accounts with her mother, with the right of survivorship, through which Pickens ultimately acquired thousands of dollars of their mother's funds. In addition, Tribble and Sargent asserted that Pickens breached her fiduciary duties as Executrix under their mother's Will by not disclosing the joint accounts on the inventory form for non-probate assets. The jury awarded Tribble and Sargent damages in the amount of $94,124.00 which the circuit court directed to be paid into the Estate.[1]

---

[1] The appendix record indicates that in 2008 Pickens was removed as Executrix of her mother's Estate and that Frank T. Litton, Jr., was appointed the Estate's curator.

1

Setting forth a number of assignments of error, Pickens principally contends that the circuit court committed error in ruling, as a matter of law, that Pickens had a fiduciary relationship with her mother from the death of the father in 1988 until July 7, 2000, at which time the mother gave Pickens general and medical powers of attorney. Pickens maintains that, prior to July 7, 2000, her relationship with her mother was merely familial, rather than fiduciary. In the alternative to a new trial, Pickens asks this Court to dismiss Tribble's and Sargent's action as untimely under the statute of limitations.

For the reasons stated below, this Court finds Pickens's assignments of error to be without merit, including her assignments concerning the fiduciary relationship and the statute of limitations. The circuit court's order of September 5, 2014, which denied Pickens's motion for a new trial is, therefore, affirmed.[2]

## I. Factual Background

The funds Tribble and Sargent allege that Pickens wrongfully acquired, and as subsequently determined by the jury, were in the form of certificates of deposit, United States Savings Bonds and a checking account. Of those three items, the certificates of deposit

---

[2] The appendix record is in excess of 2,600 pages, yet includes an incomplete trial transcript. The trial took place from January 22, 2013, to February 1, 2013. The transcript for the first two days, January 22 and 23, was lost due to the court reporter's computer failure and cannot be retrieved. Nevertheless, in Pickens's motion for an amended scheduling order filed in this Court, Pickens's counsel stated that "the missing transcripts are not necessary to the issues on appeal."

comprise the major portion of Tribble's and Sargent's claims. The following is a brief history of the transactions which occurred prior to the filing of the complaint.

On April 11, 1988, the parties' father, Charles Pickens, died. The appraisement of his Estate named the mother, age seventy, as his surviving spouse and fiduciary. Pickens was named as the "preparer" on the appraisement form. Included in the father's probate documents was an inventory of non-probate assets which listed forty-three certificates of deposit jointly owned by the father and the mother: fifteen certificates issued by Citizens National of Point Pleasant, West Virginia, (now Peoples Bank) and twenty-eight certificates issued by the Putnam County Bank at Hurricane, West Virginia.

Between the father's death in 1988 and July 2000, a great many transactions took place in which certificates of deposit were cashed, merged, renewed or newly purchased. As a result, by July 2000 approximately sixty-four certificates of deposit were issued, mostly by the Putnam County Bank, in the name of the mother "or" Pickens. According to Pickens, all such transactions were carried out by her mother personally, without any influence or wrongdoing by Pickens. Neither Tribble nor Sargent were present when the transactions occurred. The face value of the sixty-four certificates ranged from $1,000.00, representing the majority of the certificates, to $30,000.00.[3] The certificates were kept in Pickens's safety

_____

[3] As a result of the volume and complexity of the transactions concerning the certificates of deposit between 1988 and July 2000, the tracking and final listing of the

deposit box at the Putnam County Bank.

In the meantime, Pickens assisted her mother in the preparation of a March 18, 2000, letter to the United States Treasury Department's Bureau of the Public Debt. The letter stated that a number of United States Savings Bonds, purchased prior to the father's death, were lost and needed to be replaced. The letter, signed by the mother, concluded: "I am 82 years of age, and am finding it very difficult to get all my personal business taken care of." Ultimately, the Savings Bonds were reissued with an aggregate face value of $5,050.00. The reissued Bonds were in the name of the mother "or" Pickens and under Pickens's Social Security number.

On July 7, 2000, the mother executed a General Power of Attorney which authorized Pickens to act as the mother's attorney-in-fact in all matters, including real estate and banking transactions.[4] In conjunction with the General Power of Attorney, the mother executed a

---

certificates by way of the appendix record is necessarily an act of approximation. Some of the certificates of deposit were derivative of those jointly held by the parties' father and mother prior to the father's death. Moreover, a few certificates were issued after July 2000. Nevertheless, the petition filed in this Court, and Defendant's Exhibit No. 6 included in the appendix record, indicate that the number of certificates in question is sixty-four.

[4] Paragraph four of the General Power of Attorney stated:

This document is not to be construed narrowly, restrictively, or technically; rather it is to be construed in a broad and liberal manner to implement my manifest intention, herein clearly and unambiguously

4

Medical Power of Attorney, also dated July 7, 2000, which authorized Pickens to make health care decisions on the mother's behalf in the event of the mother's incapacity.

By deed made on February 20, 2002, the mother conveyed 35.42 acres in Union District, Mason County, to Pickens, subject to the reservation of a life estate for the mother's benefit. The consideration for the conveyance, from parent to child, was "less than $100.00." In an affidavit dated September 24, 2010, Rosalee Juba-Plumley, the lawyer who prepared the deed and notarized the mother's signature, stated that she told the mother that the deed did not have to be recorded. Shortly after the mother's death, Pickens recorded the deed. According to Pickens, it was her mother's wish that the deed not be recorded during the mother's lifetime. In the complaint, Tribble and Sargent challenged the validity of the February 20, 2002, deed. However, the circuit court entered a judgment as a matter of law in favor of Pickens on that issue, and the validity of the deed is not before this Court in this appeal.

In August 2004, Pickens established a joint checking account at the Putnam County Bank in her and her mother's names. The record indicates that the initial deposit of $11,623.72 consisted of the mother's funds from the Peoples Bank in Point Pleasant. Pickens

expressed, which is to vest my attorney with sweeping and total control over all of my affairs.

5

maintained that opening the account at the Putnam County Bank made it easier to pay individuals who provided care for her mother.

On January 6, 2005, the parties' mother, age eighty-seven, died of a stroke.[5] The mother's Will had been made on October 2, 1980. The father having predeceased the mother, the Will provided that the mother's property would go to her three daughters, Tribble, Sargent and Pickens, equally, "share and share alike." The Will named Pickens as Executrix and probate of the Estate was conducted in Putnam County where the mother last resided.[6]

Included in the probate documents for the mother's Estate was an inventory form for non-probate assets signed by Pickens on April 19, 2005. The Savings Bonds, valued at $5,050.00, were noted on the form. However, Pickens failed to disclose (1) the certificates of deposit in her and her mother's names, (2) the joint checking account at the Putnam County Bank and (3) the contents of Pickens's safety deposit box.

---

[5] Specifically, the mother's death certificate, signed by Dr. Vinodrai B. Lakhani, her treating physician, noted that the mother was eighty-seven years old and died of an acute cerebral vascular accident. In addition, Dr. Lakhani noted on the death certificate that the mother had the following medical conditions: (1) dementia, (2) Parkinson's disease, (3) coronary artery disease and (4) COPD.

[6] On May 10, 2005, a fiduciary hearing was conducted in the Probate Court of Putnam County. Pickens testified that her mother had always lived in Mason County. However, her mother suffered a heart attack in 2004 and, upon discharge from the hospital, was taken by Pickens to Pickens's home in Putnam County.

## II. Procedural Background

Tribble and Sargent filed their complaint in the Circuit Court of Mason County in December 2006 and an amended complaint in April 2008.

On June 19, 2008, Pickens signed an amended inventory of non-probate assets. Signed more than three years after the initial inventory in 2005, the amended inventory of non-probate assets listed twenty-five certificates of deposit issued in Pickens's and her mother's names, *i.e.*, one certificate issued by the Peoples Bank and twenty-four from the Putnam County Bank. The Savings Bonds were noted but not the joint checking account or the contents of the safety deposit box.

Thereafter, Tribble and Sargent filed a second amended complaint which alleged that, beginning at the time of their father's death in 1988, Pickens engaged in a scheme to convert their mother's property to her own use, to the prejudice of the Estate and Tribble and Sargent as beneficiaries. Tribble and Sargent further alleged that Pickens attempted to conceal her scheme by not disclosing non-probate assets while acting as Executrix.[7]

---

[7] *W.Va. Code*, 11-11-7 [2014], under "Estate Taxes" defines *non-probate personal property* as "all personal property which does not pass by operation of the decedent's will or by the laws of intestate descent and distribution or is otherwise not subject to administration in a decedent's estate at common law." Pursuant to that statute, the decedent's personal representative is required to list and appraise the decedent's non-probate personal property on a designated inventory form.

Of the numerous counts set forth in the second amended complaint, many were withdrawn or dismissed prior to the close of the evidence at trial, including Tribble's and Sargent's challenge to the February 20, 2002, deed and their allegation that their mother lacked the capacity to execute the General Power of Attorney or had been unduly influenced in that regard. The issues raised in the second amended complaint which remained and were submitted to the jury were as follows:

1. Whether Pickens breached her fiduciary duties as Executrix of her mother's Estate. This issue included Pickens's alleged concealment of assets by failing to disclose them during the probate process;

2. Whether Pickens tortiously interfered with Tribble's and Sargent's expectancy to inherit from their mother's Estate;

3. Whether Pickens committed conversion of her mother's property as her mother's fiduciary. Here, Tribble and Sargent alleged that, from 1988 through Pickens's service as Executrix, Pickens converted her mother's certificates of deposit, bank account and other property to Pickens's own use and benefit;

4. Whether Pickens, while occupying a confidential and fiduciary relationship with her mother, committed constructive fraud by inducing her mother to convert her personal property into joint accounts in both their names, with the right of survivorship;

5. Whether Pickens committed actual fraud. Here, Tribble and Sargent alleged that Pickens, in her capacity as Executrix, willfully, intentionally and fraudulently failed to disclose assets for the purpose of deceiving and defrauding the Estate and its beneficiaries. Specifically, Tribble and Sargent alleged that they relied to their detriment on fraudulent non-probate asset disclosure forms filed by Pickens and that they suffered damages as a result.

Tribble and Sargent demanded compensatory and punitive damages, including "compensation to the Estate."

8

Pickens filed an answer to the second amended complaint alleging, *inter alia*, that Tribble's and Sargent's claims were barred by the statute of limitations and laches. Pickens also filed a counterclaim against Tribble and Sargent which alleged (1) outrageous and intentional conduct, (2) defamation, (3) negligent infliction of emotional distress and (4) tortious interference with Pickens's duties as Executrix of her mother's Estate.

Trial began on January 22, 2013. During the trial, several judgments as a matter of law were entered, thus narrowing the questions to be considered by the jury. Three of those judgments are relevant to this appeal. First, Pickens was granted a judgment as a matter of law with regard to the General and Medical Powers of Attorney, thereby confirming the validity of those documents. Second, the circuit court entered a judgment as a matter of law to the effect that a fiduciary relationship existed between Pickens and her mother from June 8, 1988, when the appraisement of the father's Estate was filed, until the mother's death in January 2005. Pursuant to that ruling, Pickens had a fiduciary relationship with her mother *before*, as well as during, the time Pickens had the General and Medical Powers of Attorney. Third, the circuit court entered a judgment as a matter of law in favor of Tribble and Sargent on Pickens's counterclaim that they tortiously interfered with Pickens's duties as Executrix of their mother's Estate. All three judgments were entered pursuant to Rule 50 of the *West Virginia Rules of Civil Procedure* (authorizing judgments as a matter of law in jury trials).

9

The trial concluded on February 1, 2013. The verdict form required the jury to answer several interrogatories. The jury found that Pickens (1) breached her fiduciary duties as Executrix of her mother's Estate; (2) tortiously interfered with Tribble's and Sargent's expectancy; (3) committed conversion of the mother's property; (4) committed constructive fraud and (5) committed actual fraud. The jury rejected all claims submitted to it arising from Pickens's counterclaim. Tribble and Sargent were awarded damages in the amount of $94,124.00 which the circuit court directed to be paid into the Estate. No punitive damages were awarded.[8]

On September 5, 2014, the circuit court denied Pickens's motion for a new trial. This appeal followed.

### III. Standard of Review

A motion for a new trial is authorized under Rule 59 of the *West Virginia Rules of Civil Procedure*. Appellate review of a ruling on the motion is described in syllabus point 4 of *Sanders v. Georgia-Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976), as follows:

---

[8] The verdict form reflects the following calculations: $98,476.00 in certificates of deposit, minus two certificates in the amounts of $14,036.00 and $9,260.00 used to pay expenses for the mother's care. To the remaining $75,180.00 in certificates (converted by Pickens) was added $5,050.00 for the Savings Bonds and $13,894.00, the value of the checking account, for a total damage award of $94,124.00.

The judgment order, entered on July 11, 2013, stated: "[I]t is Ordered that the Defendant shall pay the judgment award into the Estate of Louise Pickens."

10

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

*Accord* syl. pt. 1, *Big Lots Stores, Inc. v. Arbogast*, 228 W.Va. 616, 723 S.E.2d 846 (2012).

A more specific standard of review in that regard is set forth in *Burke-Parsons-Bowlby Corp. v. Rice*, 230 W.Va. 105, 736 S.E.2d 338 (2012). Syllabus point 1 of that case states:

This Court reviews the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*See also State ex rel. Meadows v. Stephens*, 207 W.Va. 341, 345, 532 S.E.2d 59, 63 (2000) (stating that a new trial should not be granted unless prejudicial error appears in the record or substantial justice has not been done).

## IV. Discussion

### A. The Statute of Limitations

Pickens contends that this Court should dismiss the action filed against her as untimely. Though directed at all of Tribble's and Sargent's claims, Pickens draws particular attention to the certificates of deposit and asserts that Tribble and Sargent knew as early as 1994, and no later than 2001, that the certificates were in the names of Pickens and their mother. Tribble's and Sargent's initial complaint filed in 2006 solely concerned real

11

property. Their additional claims were not alleged until the filing of their first amended complaint in April 2008. Thus, Pickens asserts that the action should be dismissed because Tribble and Sargent waited seven to fourteen years, until April 2008, before bringing the claims in question.[9]

In response, Tribble and Sargent insist that, while they had an awareness that a few certificates of deposit were in the names of Pickens and their mother, they had no idea of the extent of the joint accounts, especially given the number and complexity of the transactions. Tribble and Sargent further insist that Pickens fraudulently sought to hide the certificates by not disclosing them on the initial inventory of non-probate assets. More significantly, Tribble

---

[9] The relevant statute, *W.Va. Code*, 55-2-12 [1959], states:

> Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Inasmuch as the initial complaint, filed in 2006, solely concerned real property, Tribble's and Sargent's claims alleged in the 2008 first amended complaint would not relate back to 2006 for statute of limitations purposes. *See* Rule 15 (c)(2) of the *West Virginia Rules of Civil Procedure* which states that an amendment of a pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See also*, syl., *Roberts v. Wagner Chevrolet-Olds, Inc.*, 163 W.Va. 559, 258 S.E.2d 901 (1979).

and Sargent insist that the statute of limitations issue was a question of fact and that Pickens waived the issue by not presenting it to the jury.

Syllabus point *5* of *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009), holds:

A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or jury should determine if the statute of limitation period was arrested by some other tolling doctrine. *Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact*.

(Emphasis added) *Accord* syl. pt. 4, *Evans v. United Bank, Inc.*, 235 W.Va. 619, 775 S.E.2d 500 (2015).

This Court is in agreement with Tribble and Sargent that the statute of limitations was a matter to be resolved by the jury in this action. Pickens allegedly began securing the joint

13

accounts in 1988 and continued to do so in the absence of Tribble and Sargent.[10]  Multiple

transactions took place involving thousands of dollars in certificates of deposit and Savings

Bonds, and the jury could have found that a reasonable degree of specificity concerning the

transactions, such as the quantity, face value and serial number of the documents, could not

have been known by Tribble and Sargent within the time Pickens alleges.

Nevertheless, whether Tribble and Sargent rely on the discovery rule or fraudulent

concealment under *Dunn* is of no moment.  Those questions were never presented to the jury.

In the order denying Pickens's motion for a new trial, the circuit court stated:

> [Pickens] raised the issue of statute of limitations before trial and during
> trial.  Plaintiff Sargent argued the matter was an issue of fact that should be
> determined by the jury.  As is clear by the Judgment Order and the record, the
> Court held its ruling in abeyance each time the issue was raised.  No ruling was
> ever made on the issue.  At the close of all evidence, the Court accepted
> proposed jury instructions from all parties. [Pickens] did not offer any
> proposed instruction related to the statute of limitations.  Therefore, the Court
> finds that [Pickens] waived the issue of statute of limitations.

Although Pickens raised the statute of limitations with the circuit court in various

motions before, during and after the trial, Pickens never presented the question to the jury

through argument or proffered instructions.  No reference to the statute of limitations was

among the interrogatories on the verdict form.  Thus, the response filed by Tribble and

---

[10] Sargent, for example, maintains that she lived out-of-state for many years and
was not very familiar with her parents' finances.

14

Sargent in this Court correctly observes: "It was incumbent upon Ms. Pickens to offer statute of limitations instructions not only so the issue could be presented to the jury, but so Respondents could offer their own instructions, for example, regarding the discovery rule."

Accordingly, this Court concludes that Pickens's assignment of error concerning the statute of limitations is without merit.[11]

## B. The Fiduciary Relationship

Pickens contends that the circuit court committed error in entering judgment as a matter of law to the effect that a fiduciary relationship existed between Pickens and her mother from June 8, 1988, when the appraisement of the father's Estate was filed, until Pickens was granted the General and Medical Powers of Attorney on July 7, 2000. Inasmuch as the validity of the General and Medical Powers of Attorney was upheld by the circuit court, and is not challenged in this appeal, the existence of a fiduciary relationship from July 7, 2000, until the mother's death, and beyond through Pickens's service as Executrix, is not in dispute.

---

[11] Although the doctrine of laches was raised in the pleadings, and mentioned in passing in the petition before this Court, it has not been addressed in this appeal. Therefore, we decline to consider it. *See Farmer v. Knight*, 207 W.Va. 716, 722, 536 S.E.2d 140, 146 (2000) (This Court will decline to address an issue only casually mentioned in a brief.).

15

Pickens, thus, focuses on the period prior to July 7, 2000, wherein most of the transfers of the certificates of deposit in question took place. By July 2000, approximately sixty-four certificates were issued, mostly by the Putnam County Bank, in the name of the mother "or" Pickens. Pickens contends that all such transactions were carried out by her mother personally, without any influence or wrongdoing, and that Pickens's relationship with her mother was familial, rather than fiduciary.

Consequently, Pickens asserts that whether there was a fiduciary relationship prior to July 7, 2000, was a question of fact for the jury and that the consideration and entry of the judgment as a matter of law constituted error, particularly since the circuit court made the ruling at the close of Tribble's and Sargent's case-in-chief.

A judgment as a matter of law, formerly known as a directed verdict, is authorized under Rule 50 of the *West Virginia Rules of Civil Procedure*. This Court's standard of review pertaining to a judgment as a matter of law is noted in *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002), syllabus point 5 of which states:

> 'The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this Court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a [judgment as a matter of law] will be reversed.' Syllabus Point 3, *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996).

16

*Accord* syl. pt. 1, *Estep v. Mike Ferrell Ford Lincoln-Mercury, Inc.*, 223 W.Va. 209, 672 S.E.2d 345 (2008). *See* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 50(a)(2) (4th ed. 2012) (A judgment as a matter of law should not be entered against a party "who has not been afforded an opportunity to present any available evidence bearing on a dispositive fact").

Pickens's assertion of reversible error on the ground that judgment was entered on the fiduciary issue prior to her opportunity to present evidence is unconvincing. Pickens was called as an adverse witness during Tribble's and Sargent's case-in-chief, and the circuit court stated that it was entering judgment on the basis of her testimony. Nevertheless, the record demonstrates that the court's ruling at that point in the trial was provisional. As the trial proceeded, the entry of judgment on the fiduciary issue was reconsidered three times, *i.e.*, on January 29, 30 and 31, 2013. On January 31, 2013, the circuit court stated:

> I've heard all of the evidence in this case. I don't see any evidence in dispute that there was a confidential relationship between Louise Pickens and Polly Pickens that existed, and I have used the date of the filing of the estate appraisement relating to the estate of Charles Pickens, which is June 8, 1988. And I believe at least at that date, and then going forward, uninterrupted, that [a] confidential relationship existed. It was merely formalized by the execution of the power of attorney and the medical power of attorney on July 7, 2000.

The evidence ultimately considered by the circuit court included the fact that, prior to receiving the General and Medical Powers of Attorney on July 7, 2000, Pickens was familiar with similar business affairs. Pickens was named as the "preparer" on the appraisement form

17

for her father's Estate. Moreover, she was granted a power of attorney in 1994 for an individual named Thelma Erskine. In addition, Pickens helped prepare a list of non-probate assets for an individual named Gladys Sayre who died in March 2000. Throughout her testimony, Pickens acknowledged that her mother trusted her and relied on her in financial matters.

The judgment as a matter of law on the fiduciary, pre-July 7, 2000, issue was not finalized by the circuit court until after Pickens had the opportunity to present her evidence to the jury. The judgment was reconsidered and the evidence evaluated several times before jury deliberations began. In the September 5, 2014, order denying Pickens's motion for a new trial thereon, the circuit court stated: "[T]here was no question of fact to be determined by the jury." Considering the evidence in the light most favorable to Pickens, we agree with the circuit court and find no merit in this assignment error.

Pickens's remaining assignments of error must, therefore, be viewed in the context that the fiduciary relationship between her and her mother began in 1988 with the death of Pickens's father.

### C. Breach of Fiduciary Duty

Pickens contends that, even if she had a fiduciary relationship with her mother, she did not use the relationship to acquire her mother's funds for her own purposes, especially since

18

her mother personally created the joint accounts. Thus, Pickens asserts that Tribble's and Sargent's claims have no basis in fact.

In *Barnhart v. Redd*, 196 W.Va. 142, 469 S.E.2d 1 (1996), the depositor, Ida Calloway, purchased a $10,000.00 certificate of deposit and titled it in her and John Redd's names. Although no power of attorney was involved, Redd perceived his relationship with Ms. Calloway to be custodial. During Ms. Calloway's life, he provided transportation, assisted her with banking transactions under her direction, and was named as Executor under her Will. After Ms. Calloway's death, Redd took possession of the certificate of deposit and considered it a gift. He did not mention the certificate during the reading of Ms. Calloway's Will.

The beneficiaries under the Will, in *Barnhart*, filed an action seeking to have the $10,000.00 certificate of deposit included in Ms. Calloway's Estate. Following a bench trial, the circuit court determined that a fiduciary relationship had existed between Ms. Calloway and Redd, that Ms. Calloway had entrusted her assets to Redd for limited purposes and that Redd had not proven that the certificate was an *inter vivos* gift. On appeal, Redd denied having had a fiduciary relationship with Ms. Calloway. Moreover, having acquired the certificate through the right of survivorship, Redd asserted that he was excused, under *W.Va. Code*, 31A-4-33 [1994], from proving that the certificate was a gift. Subsection (b) of the statute states:

When a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants. All such deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, any may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them.

*See* syl. pt. 2, *Dorsey v. Short*, 157 W.Va. 866, 205 S.E.2d 687 (1974) (In the absence of fraud, mistake or other equally serious fault, *W.Va. Code*, 31A-4-33, creates "a conclusive presumption" that the donor-depositor of a joint and survivorship bank account intended a *causa mortis* gift of the proceeds to the surviving joint tenant.).

However, an exception exists where the joint tenants have a fiduciary relationship. In the syllabus point of *Kanawha Valley Bank v. Friend*, 162 W.Va. 925, 253 S.E.2d 528 (1979), this Court held:

A presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a *bona fide* gift.

*Accord* syl. pt. 3, *Nugen v. Simmons*, 200 W.Va. 253, 489 S.E.2d 7 (1997); syl. pt. 1, *Koontz v. Long*, 181 W.Va. 800, 384 S.E.2d 837 (1989).

20

The principle, thus, expressed in *Friend* was dispositive in *Barnhart*. This Court, in *Barnhart*, noted that Redd's testimony was insufficient to establish that Ms. Calloway had given him the certificate of deposit as a gift, particularly since Redd had viewed his relationship with Ms. Calloway as custodial. 196 W.Va. at 147-48, 469 S.E.2d at 6. Accordingly, the judgment of the circuit court in favor of the beneficiaries was affirmed.

This Court concludes that, during the trial, Tribble and Sargent established a sufficient factual basis for their claims to go to the jury. Those claims were Pickens's alleged (1) breach of fiduciary duties as Executrix, (2) tortious interference with Tribble's and Sargent's expectancy, (3) conversion, (4) constructive fraud and (5) actual fraud. Tribble's and Sargent's evidence was not presented to show undue influence or that the mother, though in declining health, lacked the capacity to understand her business affairs. Instead, the evidence supported Tribble's and Sargent's theory that Pickens took advantage of her fiduciary and confidential relationship with the mother, without Tribble's and Sargent's knowledge, and used the relationship in a self-serving manner to convert funds which otherwise would have been included in the mother's Estate - to be distributed "share and share alike."[12] In addition,

---

[12] Tribble and Sargent did not challenge the validity of the General and Medical Powers of Attorney at trial. Rather, they maintained that those documents were a confirmation of a fiduciary and confidential relationship between Pickens and her mother. Pickens had been assisting her mother with finances since 1988. The certificates of deposit were kept in Pickens's safety deposit box. Moreover, the reissued Savings Bonds were in the name of the mother "or" Pickens and under Pickens's Social Security number.

Tribble's and Sargent's evidence suggested that Pickens hid the transactions by not fully disclosing them during the probate process.

Specifically, when Pickens filed the inventory of non-probate assets in April 2005, she failed to disclose (1) the certificates of deposit in her and her mother's names, (2) the joint checking account at the Putnam County Bank and (3) the contents of Pickens's safety deposit box. Although she later blamed her former lawyer for the omissions, it was within the jury's discretion to compare that assertion with the evidence that, in the past, Pickens had been a "preparer" of the appraisement of her father's Estate; that she had been granted a power of attorney for an individual named Thelma Erskine; and that she had helped prepare a list of non-probate assets for an individual named Gladys Sayre. Moreover, the amended inventory of non-probate assets for the Estate of Pickens's mother was not filed until three years later, after this action was filed. Even then, the inventory was unreliable. The certificates of deposit were not completely accounted for, and neither the checking account nor the contents of the safety deposit box were noted. The problems with the 2005 and 2008 inventory and amended inventory forms support Tribble's and Sargent's actual fraud claim.

Syllabus point 1 of *Latimer v. Mechling*, 171 W.Va. 729, 301 S.E.2d 819 (1983), states:

> The personal representative of the estate of a deceased acts in a fiduciary capacity. His duty is to manage the estate under his control to the

22

advantage of those interested in it and to act on their behalf.  In the discharge of this duty, the executor or administrator of a decedent's estate is held to the highest degree of good faith and is required to exercise the ordinary care and reasonable diligence which prudent persons ordinarily exercise, under like circumstances, in their own personal affairs.

*Accord* syl. pt. 5, *Zikos v. Clark*, 214 W.Va. 235, 588 S.E.2d 400 (2003).

## V. Conclusion

This Court finds Pickens's assignments of error concerning the statute of limitations, the fiduciary relationship and alleged breach thereof, and all other assigned errors to be without merit.[13]  Accordingly, the September 5, 2014, order which denied Pickens's motion

---

[13] This Court finds no grounds for reversal with regard to Pickens's assignment concerning the giving or refusing of jury instructions.  One of the instructions Pickens contends should have been given concerns the evidence of the mother's treating physician, Dr. Vinodrai B. Lakhani.  However, this Court does not have the benefit of his testimony, since, due to a malfunction of the court reporter's computer, his testimony could not be transcribed.  In Pickens's motion for an amended scheduling order filed in this Court, Pickens's counsel stated that "the missing transcripts are not necessary to the issues on appeal." *See* n. 2 of this Opinion.

In addition, Pickens contends that the circuit court committed error in allowing argument to the jury of unproven funds the mother received from two unrelated sources, neither of which involved Pickens: (1) proceeds from litigation concerning timber and (2) assets from a settlement of the Estate of Gladys Sayre.  We find the circuit court's reason for denying a new trial in that regard persuasive:

The Court did not err in permitting counsel for Plaintiff to argue for damages relating to timber litigation and/or Gladys Sayre's estate.  There was evidence in the record of these two items.  Even if, *arguendo*, no evidence had been produced, the jury did not award Plaintiffs any damages based on either item.

23

for a new trial is affirmed.

Affirmed.

---

Syllabus point 2 of *Lacy v. CSX Transportation, Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999), states:

> "The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syl. pt. 3, *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927).

*Accord* syl. pt. 6, *Matheny v. Fairmont General Hospital, Inc.*, 212 W.Va. 740, 575 S.E.2d 350 (2002).