# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**July 30, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JOHN SPAUR,**
**Plaintiff Below, Petitioner**

**v.) No. 23-ICA-170**        (Cir. Ct. of Upshur Cnty. Case No. CC-49-2015-C-85)

**TIM LEWIS,**
**Defendant Below, Respondent**

**and**

**TIM LEWIS,**
**Defendant Below, Petitioner**

**v.) No. 23-ICA-178**        (Cir. Ct. of Upshur Cnty. Case No. CC-49-2015-C-85)

**JOHN SPAUR,**
**Plaintiff Below, Respondent**

## MEMORANDUM DECISION

This is a consolidated appeal from the Circuit Court of Upshur County related to orders entered following a bench trial on October 15, 2021. In case number 23-ICA-170, John Spaur appeals from the circuit court's April 13, 2023, Final Order. In case number 23-ICA-178, Tim Lewis appeals from the circuit court's January 11, 2022, Memorandum Order. Mr. Lewis and Mr. Spaur each filed a response.[1] Neither party filed a reply. From these orders, the parties raise several assignments of error.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision, but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for resolution in a memorandum decision. For the reasons set forth below, the circuit court's orders are affirmed, in part, vacated, in part, and the matter is remanded to the circuit court with directions.

---

[1] Mr. Spaur is represented by Timothy J. LaFon, Esq. Mr. Lewis is represented by Harry A. Smith, III, Esq.

1

On October 15, 2021, a bench trial was held regarding an amended complaint dated February 17, 2017, and filed by Mr. Spaur against Mr. Lewis. Its allegations were based upon the alleged malfeasance of Mr. Lewis regarding his handling of assets belonging to Mr. Spaur's mother, Roberta Ellen Spaur ("Decedent Spaur"), before and after her death. The amended complaint alleged four causes of action against Mr. Lewis: (1) conversion; (2) constructive trust; (3) breach of fiduciary duty; and (4) tort of outrage. As relief, the amended complaint sought compensatory and punitive damages, pre-judgment and post-judgment interest, and attorney's fees. According to the circuit court's January 11, 2022, Memorandum Order, the following facts were established at trial.

Mr. Spaur is the son and sole heir of Decedent Spaur. On October 10, 2011, Decedent Spaur suffered a stroke and entered a nursing home. She was also suffering from dementia and passed away on November 28, 2011. Under Decedent Spaur's Will ("Spaur Will"), Mr. Spaur was named the executor of her estate. However, at the time of his mother's death, Mr. Spaur was serving a federal prison sentence. Unable to serve as executor, Mr. Spaur asked Mr. Lewis to serve in that capacity.[2] Among its terms, the Spaur Will declared:

> I direct that my Executor hereinafter shall out of my Estate pay all of my just debts and funeral expenses as soon as may be conveniently done after my death. I give, devise and bequeath unto my son John Michael Spaur all of my property, which I may own at the time of my decease of whatever kind, character or description and whatever situate whether real, personal or mixed.

At the time of her death, Decedent Spaur had two bank accounts. The first account was a joint account, belonging to Decedent Spaur and Mr. Spaur ("Spaur Account"). The second account was a joint account created on May 14, 2011, in the name of Decedent Spaur and Mr. Lewis ("Lewis Account"). Mr. Lewis had told Mr. Spaur that the Lewis Account had been created so that Mr. Lewis could pay Decedent Spaur's needs until her death, and then, the expenses for her estate. He also informed Mr. Spaur that the Spaur Account would remain untouched, pending his release from prison.

The circuit court set forth a timeline of activity for the Lewis Account as follows. On June 30, 2011, a $4,000.00 deposit was made into the Lewis Account from the Spaur Account. This check's memo indicated that the amount was for "gas well." On July 1, 2011, Mr. Lewis wrote a check from the Lewis Account to JET Productions for $4,000.00 with the memo denoting the funds were used for a "well in Ohio." Then, on October 15, 2011, Mr. Lewis deposited $47,425.00 from the Lewis Account into his own personal checking account. At trial, Mr. Lewis admitted he used the money to pay his own IRS debt.

---

[2] Mr. Spaur was released to a halfway house in February of 2015.

On October 17, 2011, a deposit of $71,185.58 was made into the Lewis Account from the sale of Decedent Spaur's home. Next, on October 28, 2011, Mr. Lewis cashed a $400.00 check from the Lewis Account. The memo stated it was "cash sent to John." Lastly, on October 29, 2011, Mr. Lewis wrote a check to himself from the Lewis Account for $800.00, noting in the check's memo that the amount was for "tax preparing."

Based on those transactions, the circuit court determined that Mr. Lewis had transferred a total of $52,625.00 to himself. In its Memorandum Order, the circuit court found that following Decedent Spaur's death, Mr. Lewis transferred an additional $27,349.50 to himself from the Lewis Account, which prior to the transfer, had a balance of $59,724.99. The circuit court also found that following Decedent Spaur's death, Mr. Lewis, without consent or authority, converted the Spaur Account into an estate account. Thereafter, $30,843.63 from the Spaur Account was spent on miscellaneous items for the estate, as well as other unidentified items and expenses.

The circuit court concluded that Mr. Lewis had been unjustly enriched by a total of $79,974.50. The circuit court reduced that amount by the $30,843.63 spent from the Spaur Account for the estate and awarded Mr. Spaur $49,130.87 in compensatory damages. The circuit court's Memorandum Order further found that Mr. Lewis testified that he had lied during his deposition, that he took the money from the subject accounts for deceitful purposes, and that he offered no legal defense for his actions.

The Memorandum Order also found that Mr. Lewis assumed the executor role at the request of Mr. Spaur, and because there was no formal filing to appoint Mr. Lewis as executor of Decedent Spaur's estate, no formal, legal fiduciary duty existed. The Order also addressed punitive damages and attorney's fees as follows:

> Under West Virginia Code § 55-7-29 punitive damages are allowed against a defendant when it is established by clear and convincing evidence that the damages suffered were a result of the conduct that was carried out by the Defendant with acts of malice toward the Plaintiff or a conscious, reckless outrageous indifference to the health, safety[,] or welfare of others. West Virginia Code § 55-C-29(c) [sic] limits punitive damages to four times the amount of compensatory damages or five hundred thousand dollars ($500,000.00), whichever is greater.

> [Mr. Lewis] maintained a joint bank account with Roberta Spaur in order to pay for her bills and Estate expenses. [Mr. Lewis] transferred 47k out of the joint bank [sic] he maintained with Roberta Spaur to his own personal bank account in order to pay off his personal Internal Revenue Service debt. [Mr. Lewis] admitted in his trial testimony that he lied and intended to deceive in his deposition testimony.

3

West Virginia allows a prevailing party to recover attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or oppressive reasons. Syl. Pt. 1, *Sally-Mike Properties v. Yokum*, 365 S.E.2d 246 (W. Va. 1986).

[Mr. Lewis] offered no defense at trial and did not deny the allegations set forth in the complaint. [Mr. Lewis] admitted to transferring money from an account that was intended to benefit Roberta Spaur's Estate and [Mr. Spaur] and [sic] into his own personal bank account in order to pay off his IRS debt and other expenses. This was done during a time where Roberta Spaur was suffering from Dementia and had just suffered a stroke.

This Court is inclined to award [Mr. Spaur] attorney's fees in this matter. The Court allows [Mr. Spaur] to submit an affidavit to the Court for review for award of said attorney's fees, particularly with regard to the trial in this matter in where most of the trial testimony was uncontroverted in favor of [Mr. Spaur]. [Mr. Spaur] shall divide the attorney's fees in to [sic] pretrial, at trial, and post-trial attorney's fees.

In a brief Final Order dated April 13, 2023, the circuit court found it had previously awarded Mr. Spaur $49,130.87 in compensatory damages; that on October 18, 2022, it entered an order awarding Mr. Spaur $15,788.31 in attorney's fees; and that it was denying Mr. Lewis' pending motion for a new trial.[3] The circuit court further noted that through this Final Order, all of the case's prior orders were now final and appealable.[4] These appeals followed. On appeal, we apply the following standard of review:

In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 331, 480 S.E.2d 538, 540 (1996).

---

[3] The motion was filed on January 21, 2022.

[4] Notably, while the Memorandum Order cursorily addressed the fiduciary duty count of the amended complaint, neither it nor the Final Order addressed the counts of conversion, constructive trust, or tort of outrage, which were raised in the amended complaint.

4

Between them, the parties raise several assignments of error.[5] For the purposes of clarity, we consolidate the related issues. *See Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 401-02, 729 S.E.2d 231, 236-37 (2012) (consolidating related and/or redundant assignments of error).

Because the Lewis Account is at the heart of the majority of the circuit court's rulings on appeal, we must first address Mr. Lewis' argument that the circuit court erred by considering the Lewis Account at trial. On this issue, Mr. Lewis argues that the Lewis Account was not properly before the circuit court because it was not specifically alleged in the amended complaint and, thus, he had no notice that it would be put at issue during trial. We are not persuaded by this argument.

Upon review of the record, we find that evidence regarding the Lewis Account was properly before the circuit court at trial. The amended complaint alleged conversion of estate assets and the record establishes the Lewis Account was created for the benefit of Decedent Spaur and was funded with her own funds, which included the substantial proceeds from the sale of her home during her lifetime. The record also shows that records of the Lewis Account were provided by Mr. Lewis in his discovery responses; listed by Mr. Lewis a trial exhibit in his pre-trial disclosures; and extensively discussed during Mr. Lewis' deposition. These facts are not contested.

As our Supreme Court of Appeals explained in *Graham v. Wallace*, 214 W. Va. 178, 588 S.E.2d 167 (2003):

> This Court explained in *McDougal v. McCammon,* 193 W.Va. 229, 236–37, 455 S.E.2d 788, 795–96 (1995), that "one of the purposes of the discovery process under our Rules of Civil Procedure is to eliminate surprise. Trial by ambush is not contemplated by the Rules of Civil Procedure." The discovery process is the manner in which each party in a dispute learns what evidence the opposing party is planning to present at trial. Each party has a duty to disclose its evidence upon proper inquiry. The discovery rules are based on the belief that each party is more likely to get a fair hearing when it knows beforehand what evidence the other party will present at trial. This allows for each party to respond to the other party's evidence, and it provides the jury with the best opportunity to

---

[5] Specifically, Mr. Spaur alleges that the circuit court erred in its calculation of damages, failed to award punitive damages, and erred by reducing his award of attorney's fees. Whereas Mr. Lewis argues the circuit court erred by considering the Lewis Account at trial, erred by including the Lewis Account in its calculation of damages, erred by permitting evidence of Decedent Spaur's mental capacity at trial, and erred in its denial of his motion for a new trial.

hear and evaluate all of the relevant evidence, thus increasing the chances of a fair verdict.

*Id.* at 173-74, 588 S.E.2d at 184-85. Here, we conclude the record shows that Mr. Lewis placed Mr. Spaur on notice that the Lewis Account would be part of the evidence adduced at trial. Thus, the Lewis Account was properly before the circuit court for consideration.

Mr. Lewis also argues that the circuit court committed reversible error by admitting evidence on Decedent Spaur's capacity as it related to the creation of the Lewis Account. He maintains it was not raised in the amended complaint and even if it were, there was insufficient evidence to find Decedent Spaur lacked capacity. Based upon our review of the record, we find this argument to be misplaced. First, because Mr. Lewis' brief does not cite to the record on this issue, it is unclear to this Court as to whether an objection was made before the circuit court to preserve this issue for appeal. However, even if this issue were preserved, there is nothing in the record to establish that competency was ever put at issue, and more importantly, there is nothing within the four corners of the orders on appeal to support a conclusion that the circuit court made any express ruling on Decedent Spaur's competency on the date the Lewis Account was created. Instead, the Memorandum Order states that she was in a nursing home and was suffering from the effects of a stroke and dementia. The facts regarding Decedent Spaur's mental and physical health came from Mr. Lewis' own testimony, who also testified the Lewis Account was created to provide for Decedent Spaur's needs during her lifetime. Thus, there is nothing in the record which places competency at issue. At best, the circuit court's factual findings can be construed as addressing the purpose for the Lewis Account's creation in light of the evidence presented at trial.

Mr. Lewis also argues the evidence properly established that the Lewis Account was a survivorship account pursuant to West Virginia Code § 31A-4-33 (1994),[6] that there was no evidence the account was intended to pass with the estate, and that by law, its funds became his sole property upon Decedent Spaur's death. Conversely, Mr. Spaur argues that the evidence rebutted the presumption that the Lewis Account was intended to be a survivorship account, and that the evidence established it was intended to be part of the estate.

Turning to these arguments, we recognize that our law has long recognized there is a rebuttable presumption under West Virginia Code § 31A-4-33 that the funds in a joint account pass upon a tenant's death to the surviving joint tenant, and our Supreme Court of

---

[6] We recognize this statute was amended, effective June 8, 2022. However, the cited version of the statute was in effect at the time the events of this matter arose and applies to this case.

Appeals has addressed this presumption on numerous occasions.[7] Nevertheless, our review of this issue is presently foreclosed due to the circuit court's failure to expressly address this issue, an issue significant to the disposition of the case as a whole, in its orders below. Therefore, we find it necessary to remand this matter to the circuit court for entry of an amended order, with detailed analysis as to whether the survivorship presumption was rebutted regarding the intent behind the creation of the Lewis Account.

Next, we will collectively address the parties' assignments of error related to the circuit court's ruling on damages. Both parties argue that the circuit court erred in its award of damages; namely, Mr. Spaur asserts he was legally entitled to more than the $49,130.87 the circuit court awarded in compensatory damages. He also argues the circuit court erred when it failed to award him punitive damages, despite finding Mr. Lewis acted vexatiously and willfully when it awarded attorney's fees. Conversely, Mr. Lewis contends that the circuit court's damages calculation is flawed because it includes the Lewis Account, and that Mr. Spaur is not entitled to compensatory damages because he was only entitled to the remaining balance of the Spaur Account, which he received.

First, with respect to Mr. Lewis' arguments on damages, as we previously established, there are outstanding determinations to be made by the circuit court regarding the Lewis Account, which are a prerequisite to its consideration of damages. As a result, this alleged error is not presently ripe for consideration and cannot be addressed in this present appeal. As to Mr. Spaur's arguments, we find the circuit court's order lacks sufficient findings of fact and conclusions of law regarding its calculations of damages to permit for a meaningful appellate review of the arguments raised on appeal. As our Supreme Court of Appeals has recognized:

> Without findings of fact and conclusions of law, [an appellate court] is unable to determine the basis for the court's decision and whether any error has occurred. Consequently, in cases where there is an absence of adequate factual findings, it is necessary to remand the matter to the lower court to state or, at a minimum, amplify its findings so that meaningful appellate review may occur.

*Mullins v. Mullins*, 226 W. Va. 656, 662, 704 S.E.2d 656, 662 (2010) (citation omitted).

Here, the orders on appeal set forth several transactions between the Spaur and Lewis Accounts and list certain aggregate sums before setting forth its award of

---

[7] *See, e.g., Kanawha Valley Bank v. Friend*, 162 W. Va. 925, 253 S.E.2d 528 (1979); *Simmons v. Simmons*, 171 W. Va. 170, 298 S.E.2d 144 (1982); *Yaromey v. King*, 182 W. Va. 126, 386 S.E.2d 493 (1989); *Lutz v. Orinick*, 184 W. Va. 531, 401 S.E.2d 464 (1990); *Rosier v. Rosier*, 227 W. Va. 88, 705 S.E.2d 595 (2010); *Pickens v. Tribble*, 236 W. Va. 670, 783 S.E.2d 310 (2016).

7

compensatory damages. However, the circuit court's orders fail to set forth with specificity both the sources of those sums or how they were calculated, as well as fail to provide any analysis to support its ultimate calculation of those damages. Further, with respect to punitive damages, absent a single paragraph in the Memorandum Order briefly discussing the law on punitive damages, the circuit court's orders fail to undertake any further analysis or offer any ruling on Mr. Spaur's request for such damages. Absent amplified findings of fact and conclusions of law on the issue of damages, this Court is not in a position to rule on the merits of the circuit court's orders or the merits of the parties' arguments on appeal.

Moreover, our review of this issue is further hindered by the circuit court's failure to sufficiently address each cause of action raised against Mr. Lewis in the amended complaint. The Final Order only offers a cursory analysis of the breach of fiduciary duty count and fails to address the counts of conversion, constructive trust, or tort of outrage. If proven, these claims could be compensable and, thus, the circuit court is obligated to address each of those counts with particularity so that this Court can properly review any subsequent award of damages. As such, we vacate the Memorandum and Final Orders with respect to damages and remand the matter to the circuit court with directions to address these deficiencies through entry of an amended order.

The final two assignments of error before us are Mr. Lewis' argument that the circuit court erred when it denied his motion for a new trial and Mr. Spaur's argument that the circuit court erred by reducing his award of attorney's fees. We quickly dispose of these two issues. First, because we are vacating portions of the circuit court's orders and remanding those issues for further development, Mr. Lewis' motion for new trial argument is no longer ripe for consideration.

Next, we conclude that Mr. Spaur has waived his right to challenge the circuit court's ruling on attorney's fees because he failed to appeal the appropriate order. The consolidated record on appeal contains an October 18, 2022, Order Awarding Attorneys' Fees. However, this Order was not listed or attached to Mr. Spaur's Notice of Appeal Form, which are plainly stated requirements in the Form's instructions. Only the circuit court's Memorandum Order and Final Order are identified by Notice of Appeal Forms filed by the parties herein. While the Final Order contains the language: "After conducting a hearing on October 18, 2022, the Court entered and Order awarding attorney's fees to the Plaintiff and against the Defendant in the amount of $15,788.31," and states that all of its orders in the case were now appealable, a recitation of the case's procedural history is insufficient to place the attorney's fees at issue on appeal.

Our law states that when a timely motion for a new trial is filed, the motion "suspends the finality of the judgment and makes the judgment unripe for appeal. When the time for an appeal is so extended, its full length begins to run from the date of entry of the order disposing of the motion." Syl. Pt. 4, *McCormick v. Allstate Ins. Co.*, 194 W. Va. 82, 83, 459 S.E.2d 359, 360 (1995). Thus, Mr. Lewis' timely filed motion for a new trial

8

stayed the finality of all the circuit court's orders in the underlying case, and those prior orders did not become final until April 13, 2023, when the Final Order was entered denying the motion for a new trial. This triggered the timeline for filing an appeal of any order from this case, including the order on attorney's fees. To properly raise this issue, Mr. Spaur was required to include the October 18, 2022, order in his notice of appeal because it was the only order ruling on the merits of the issue. Therefore, we affirm the circuit court's award of attorney's fees.[8]

Accordingly, we affirm, in part, and vacate, in part, the circuit court's January 11, 2022, Memorandum Order and April 13, 2023, Final Order. We affirm the circuit court's rulings with respect to attorney's fees and its consideration of the evidence presented regarding the Lewis Account at trial. However, we vacate the Memorandum Order and Final Order on the issues set forth herein and remand the case to circuit court for entry of an amended order. On remand, the circuit court is directed to address all the causes of action raised against Mr. Lewis in the amended complaint, consider the rebuttable presumption with regard to the Lewis Account, as well as provide analysis and explanation of its rulings with respect to compensatory and punitive damages. Furthermore, the amended order shall set forth findings of fact and conclusions of law sufficient to allow for meaningful appellate review should either party elect to file a new appeal.

Affirmed, in part, Vacated, in part, and Remanded with Directions.

**ISSUED:** July 30, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[8] We note that Mr. Spaur's Notice of Appeal Form only identifies the April 13, 2023, Final Order, and not the January 11, 2022, Memorandum Order, which contains the circuit court's rulings on the merits. *See* W. Va. R. App. P. 5(b). However, because the Court consolidated these cases for decision upon the uncontested motion of Mr. Spaur, Mr. Lewis' appeal of both the Final Order and Memorandum Order saves Mr. Spaur's remaining assignments of error.