# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Marsha A. Casdorph-McNeil,**
**Petitioner**

**FILED**

**September 9, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 18-0497** (Kanawha County 17-AA-69)

**Mark Casdorph,**
**Respondent**


## MEMORANDUM DECISION


Petitioner Marsha A. Casdorph-McNeil, by counsel Gregory E. Elliott, appeals the Circuit Court of Kanawha County's April 26, 2018, order affirming the County Commission of Kanawha County's ("County Commission") order finding that certain jointly-held accounts were probate assets, ordering present day value calculations of probate assets, and charging missing probate assets against petitioner's distribution. Respondent Mark Casdorph, by counsel Charles R. Bailey and Adam K. Strider, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties to this appeal are brother and sister. On January 6, 1997, their aunt, Mary Lola Hawkins, died testate. Frances H. Casdorph ("Frances"), Ms. Hawkins's sister and the parties' mother, was confirmed as executrix of Ms. Hawkins's estate (the "Hawkins estate"), and she was its sole beneficiary.

On March 24, 1997, the parties' father, Jack N. Casdorph, died testate. Frances, the sole beneficiary of Jack N. Casdorph's estate (the "Jack Casdorph estate"), declined to serve as executrix, and petitioner was appointed in her stead. Petitioner was also appointed as administratrix of the Hawkins estate after Frances no longer wished to serve as executrix.

On March 17, 1999, Frances died testate. The parties were the beneficiaries of her estate (the "Frances Casdorph estate"), and petitioner was appointed executrix. Frances's will provided that the parties were to share equally certain real estate located in Elkview, West Virginia, with one-third of the residue of the estate distributed to respondent and two-thirds to petitioner. Among other assets, Frances held accounts at a credit union containing $155,571.19 (the "subject

1

accounts"), which were held jointly with petitioner. Following Frances's death, petitioner removed the funds from the subject accounts and placed them into her personal bank account.

On July 7, 1999, petitioner filed an "Appraisement and Non-Probate Inventory" for the Hawkins estate and the Jack Casdorph estate; however, she took no further action to administer either estate, despite numerous efforts by the Fiduciary Supervisor's Office to contact her and its issuance of multiple summonses.

Shortly after petitioner was appointed executrix of the Frances Casdorph estate, Craig Kay, attorney for the Frances Casdorph estate, submitted a document titled "Probate Information" to the Fiduciary Supervisor's Office approximating the total value of that estate at $500,000. Petitioner, however, failed to timely file an appraisement of the Frances Casdorph estate, despite the Fiduciary Supervisor's Office's numerous attempts to contact her and its issuance of a May 15, 2001, letter warning her of possible penalties. The Fiduciary Supervisor's Office also issued a number of summonses directing petitioner to appear at the Fiduciary Supervisor's Office and submit the appraisement and inventory form for the Frances Casdorph estate at the time of appearance. Petitioner never appeared.

On October 1, 2010, respondent requested petitioner's removal as executrix of the Frances Casdorph estate. By order dated October 19, 2010, the County Commission referred the Frances Casdorph estate to a fiduciary commissioner, who scheduled a hearing on the removal petition for January 13, 2011. Petitioner failed to post the required bond; accordingly, the hearing was canceled, subject to rescheduling should petitioner post the bond. The fiduciary commissioner further advised that failure to post the bond by February 12, 2011, would result in a recommendation to the County Commission that the removal petition be granted. Petitioner failed to post the bond and cooperate with the fiduciary commissioner.

On January 21, 2011, respondent learned that the Elkview property referenced in Frances's will had been sold for unpaid taxes. Respondent was unable to contact petitioner, so he personally paid $1,338.98 to redeem the property.

On May 20, 2011, the County Commission revoked petitioner's appointment as executrix of the Frances Casdorph estate and appointed respondent as executor. The County Commission further ordered petitioner to turn over to respondent all assets, personal property, and financial documents of the Frances Casdorph estate, and to provide an accounting to the Fiduciary Supervisor's Office. Petitioner failed to comply with this order. A summons, dated July 23, 2011, was issued to petitioner directing her to appear at the Fiduciary Supervisor's Office on August 10, 2011, to present a full accounting of the Frances Casdorph estate, but petitioner failed to appear. Petitioner's appointments as administratrix of the Hawkins estate and executrix of the Jack Casdorph estate were also revoked for her failure to properly administer the estates, and respondent was appointed executor.

On April 26, 2013, respondent filed an "Appraisement and Non-Probate Inventory" for the Frances Casdorph estate listing certain assets, but on October 15, 2013, respondent informed the Fiduciary Supervisor that he was unable to provide an accurate accounting of all three estates, despite his efforts and those of several attorneys and an accountant. Respondent blamed

petitioner's inappropriate actions in administering the estates for the confusion regarding the estates and listed a series of concerns, including that $155,571.19 held by Frances at a credit union (in the subject accounts) was not distributed according to Frances's will and had disappeared, that stock dividend checks were cashed and not distributed in accordance with Frances's will, and that certain oil and gas rights were lost due to petitioner's failure to pay taxes. Respondent sought to have the Frances Casdorph estate again referred to a fiduciary commissioner, and on November 14, 2013, the County Commission referred the Frances Casdorph estate to another fiduciary commissioner. Later, the Hawkins estate and Jack Casdorph estate were also referred to the fiduciary commissioner as all three estates were "inextricably intertwined."

The fiduciary commissioner held several evidentiary hearings. Primarily, the parties disagreed over the disposition of the subject accounts. Petitioner maintained that because the funds were held in an account jointly titled with Frances, she was entitled to a presumption that these funds were non-probate assets and a gift to her upon Frances's death. *See* W. Va. Code § 31A-4-33(b). Mr. Kay, the estate's counsel, testified that he met with Frances prior to her death, and his notes from that meeting reflect that Frances informed him that she placed petitioner's name on the subject accounts "as a matter of convenience." Mr. Kay also prepared an "Appraisement and Non-Probate Inventory" for the Frances Casdorph estate, which listed the subject accounts as probate assets. This document was never filed, however.

The fiduciary commissioner issued her "Recommendation of Fiduciary Commissioner" on July 6, 2016. The fiduciary commissioner concluded that petitioner occupied a confidential and fiduciary relationship with Frances as well as with Jack Casdorph and Mary Lola Hawkins. In support, the fiduciary commissioner noted that petitioner held a medical power of attorney for all three individuals during their lives; she was empowered to act under the three individuals' living wills; she assisted the individuals with errands, including banking matters; and she provided care and assistance during their final illnesses. Moreover, petitioner succeeded to the appointments of administratrix of the Hawkins estate and executrix of the Jack Casdorph estate at Frances's request after Frances, who was suffering the loss of her sister and husband in quick succession, "felt herself unequal to the task of administering their estates." Frances was the sole beneficiary of these estates, and petitioner refused to timely and appropriately administer them for Frances's benefit.

As a result of these findings, the fiduciary commissioner found that the burden shifted to petitioner to establish that the funds in the subject accounts were intended as a gift. In light of Mr. Kay's testimony and evidence, the fiduciary commissioner found that petitioner failed to make the required showing and recommended that the subject accounts be deemed probate assets and that the money in the subject accounts be calculated at present value. Further, "[a]ny other identifiable assets, missing or recovered, may also be calculated at present value, if necessary in order to achieve justice and an equitable distribution." Additionally, given that petitioner's "malfeasance and nonfeasance" caused assets to disappear from all three estates, the fiduciary commissioner recommended that any missing assets "be deemed to have been distributed" to petitioner and the Frances Casdorph estate "be calculated accordingly."

Petitioner filed objections to the fiduciary commissioner's recommendation with the County Commission. Of relevance to the instant appeal, petitioner challenged the fiduciary commissioner's conclusion that the joint accounts were estate assets, the apportionment of missing

assets against her distribution, and the present value calculations. With regard to this last issue, she stated that

> [a]s to the issue raised on the present day value of some distribution that should have been made to [respondent] the argument is speculative at best, since the only distributions would have been from Exxon dividends. Under *W. Va. Code 31-4A-33*, the [c]redit [u]nion accounts and any other joint accounts passed entirely to [petitioner] as the joint owner and that <u>conclusive presumption has never been rebutted</u>. Furthermore, any distribution which should have occurred does not carry a penalty of calculating a present day value for failure to distribute and the existing law does not support the [c]ommissioner's [r]ecommendations that the present day value of some past failed distribution would either ma[k]e [respondent] whole or punish [petitioner] fully. After all, [respondent] sat on the "sidelines" for ten (10) plus years without lifting a hand to assist or to remove his sister, [petitioner].

Respondent filed a response to petitioner's objections, which did not address the present value calculation issue, and a hearing on the objections was held before the County Commission on February 16, 2017. The County Commission found that the subject accounts were intended to be assets of the Frances Casdorph estate and that the findings of fact and conclusions of law contained within the "Recommendation of Fiduciary Commissioner" were fair and reasonable, not contrary to West Virginia law, and resulted in an equitable outcome; therefore, it affirmed and adopted that recommendation, but it did not specifically address the present value calculation issue.

On August 15, 2017, petitioner appealed the County Commission's final order to the circuit court challenging, among other things, the present value calculation[1], apportionment of missing assets against her distribution, and determination that the funds in the subject accounts were not intended as a gift. Concerning the subject accounts, the court found petitioner's holding of a medical power of attorney insufficient by itself to give rise to the presumption of constructive fraud. But in light of Mr. Kay's testimony concerning Frances's intent with respect to the subject accounts, and in conjunction with the facts that petitioner served as administrator for the two estates that funneled into the Frances Casdorph estate and assisted Frances with financial and banking duties late in life, the circuit court concluded that a presumption of constructive fraud was appropriate. The court further found that petitioner failed to overcome the presumption of constructive fraud; therefore, it concluded that the subject accounts were properly deemed probate assets.

The circuit court declined to rule on petitioner's challenge to the present value calculations, finding that challenge waived because "[n]owhere in the lower proceedings below was the [p]etitioner's issue with present value calculations or these allegedly unaccounted-for funds raised." Finally, the circuit court found no error in the apportionment of any lost or missing items of the Frances Casdorph estate against petitioner's share because she "presented no argument as

---

[1] Petitioner's argument on this issue was nearly identical to that presented to the County Commission, differing only in the substitution of "Commission's Final Order" for "Commissioner's Recommendations" and adding to the last sentence that "this concept is merely punitive for [petitioner's] failures and is definitely not supported by statute or case law."

to why the holding below that equity demands the assessment of missing assets against [her] share was in error." It is from this April 26, 2018, order affirming the County Commission's order that petitioner appeals.

When reviewing the final disposition of a circuit court acting as an intermediate appellate court from the County Commission, "[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 1, *Haines v. Kimble*, 221 W. Va. 266, 654 S.E.2d 588 (2007) (quoting Syl. Pt. 4, *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d 114 (1996)).

In petitioner's first assignment of error, she claims that the circuit court erred in determining that she held a confidential or fiduciary relationship with Frances as the medical power of attorney she held was insufficient to create such a relationship, particularly where she never exercised any powers under that document. But if this Court disagrees and finds that the medical power of attorney was sufficient to create such a relationship, petitioner relies on *Vance v. Vance*, 192 W. Va. 121, 451 S.E.2d 422 (1994), and *Nugen v. Simmons*, 200 W. Va. 253, 489 S.E.2d 7 (1997), to argue that the burden of proving that the proceeds were a gift should not have shifted to her because she did not use the relationship to create the subject accounts or divert funds into them.

Petitioner claims that, instead, she was entitled to the presumption provided for in West Virginia Code § 31A-4-33(b) that the proceeds of the subject accounts were a gift. Petitioner notes that Frances's failure to place any restrictions on the subject accounts, such as limiting petitioner's abilities to writing checks and paying bills, supports the inference that the proceeds in the subject accounts were intended as a gift. Petitioner also argues that the heightened burden of proof necessary to overcome the presumption of a gift is due to the fact that the signature card and deposit in the subject accounts represent an agreement between her and Frances and evidence of Frances's intent with respect to the proceeds.

West Virginia Code § 31A-4-33(b) provides that

> [w]hen a deposit is made by any person in the name of such depositor and another or others and in form to be paid to any one of such depositors, or the survivor or survivors of them, such deposit, and any additions thereto, made by any of such persons, upon the making thereof, shall become the property of such persons as joint tenants. All such deposits, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to any one of them during the lifetime of them, or to the survivor or survivors after the death of any of them.

This statute "creates, in the absence of fraud, mistake or other equally serious fault, a conclusive presumption that the donor depositor of a joint and survivorship bank account intended a causa mortis gift of the proceeds remaining in the account after his death to the surviving joint tenant." Syl. Pt. 2, in part, *Dorsey v. Short*, 157 W. Va. 866, 205 S.E.2d 687 (1974). But

[a] presumption of constructive fraud may arise in connection with joint bank accounts with survivorship, if the parties to the joint account occupy a fiduciary or confidential relationship. This presumption requires the person who benefits from the creation of the account to bear the burden of proving that the funds were, in fact, a [b]ona fide gift.

Syllabus, *Kanawha Valley Bank v. Friend*, 162 W. Va. 925, 253 S.E.2d 528 (1979).

Here, petitioner's argument that the circuit court erred in finding that the medical power of attorney was sufficient to create a fiduciary or confidential relationship misstates the court's finding. The court found that "[t]he fact that the [p]etitioner served as the medical power of attorney for [Frances] is not sufficient by itself to provoke the presumption of constructive fraud." Instead, the court relied upon the "totality of the circumstances" in finding the existence of a fiduciary or confidential relationship, which included not only the medical power of attorney but also the fact that petitioner was the administrator for two estates that funneled into Frances's, which estates petitioner should have administered for Frances's benefit, and assisted Frances with financial and banking duties late in life. Petitioner's arguments on appeal ignore these additional findings, and the presence of these additional factors distinguishes this case from *Vance* and *Nugen*.

Petitioner cites *Vance* and *Nugen* for the proposition that "[i]t is not the fact that fiduciary relationship exists that requires the proving of the bona fide gift. Rather, it is the fact that the fiduciary powers were used by the fiduciary to divert funds to the joint tenancy with the right of survivorship that is determinative." *Vance*, 192 W. Va. at 124, 451 S.E.2d at 425; *see also Nugen*, 200 W. Va. at 257, 489 S.E.2d at 11 ("It is important to note that a party seeking to invoke constructive fraud under *Friend* must show not only that a confidential or fiduciary relationship existed, but also that the fiduciary used the relationship to direct property into the joint tenancy."). In *Vance*, the individual who benefited from the creation of the joint account only held a power of attorney for the decedent, but he "in no way used his fiduciary power to bring about the transfer of assets to the joint account." 192 W. Va. at 124, 451 S.E.2d at 425. In *Nugen*, we found no evidence of a confidential or fiduciary relationship in the first place as the only circumstances argued in support of such a relationship were that the individual in whose name the account was jointly titled met the decedent for coffee daily before the decedent's death, that the individual stated that he was "looking out for the decedent's interests as well as his health," and that the individual had previously invited the decedent to live with him. 200 W. Va. at 258, 489 S.E.2d at 12. But we also found no evidence that "whatever relationship" was occupied with the decedent was used "to influence the decedent's decision to place the funds in the disputed joint account." *Id.*

In this case, however, Mr. Kay's notes make clear that petitioner's relationship with Frances—particularly petitioner's assistance with banking matters—gave rise to the creation of the jointly-titled subject accounts. We find these circumstances to be more akin to those presented in *Barnhart v. Redd*, 196 W. Va. 142, 469 S.E.2d 1 (1996), than *Vance* or *Nugen*.

In *Barnhart*, John Redd appealed the circuit court's determination following a bench trial that a fiduciary or confidential relationship existed between him and Ida Calloway and that he had

6

not proven that a $10,000 certificate of deposit titled jointly in his and Ms. Calloway's names was a gift. 196 W. Va. at 144, 469 S.E.2d at 3. Ms. Calloway did not grant Mr. Redd a power of attorney and he never used funds in her accounts for his personal needs, but he testified that he assisted Ms. Calloway with banking matters and believed "he was supposed to 'help her' in a custodial capacity." *Id.* at 147, 469 S.E.2d at 6. These facts were sufficient to shift the burden to Mr. Redd to prove that the certificate of deposit was a gift. *Id.* at 147-48, 469 S.E.2d at 6-7. We also found nothing to substantiate Mr. Redd's assertion that the funds were intended as a gift from Ms. Calloway; therefore, the circuit court's judgment was affirmed. *Id.*

As explained above, and just as in *Barnhart*, petitioner assisted Frances with banking matters and this assistance prompted Frances's joint titling of the subject accounts. Thus, we find no error in the lower tribunals' determination that petitioner held a confidential or fiduciary relationship with Frances and that the burden shifted to her to prove a bona fide gift.

We likewise find no error in the circuit court's conclusion that petitioner failed to meet her burden of establishing that the proceeds in the subject accounts were intended as a gift. Petitioner's arguments concerning the restrictions that could have been placed on the subject accounts are unavailing in light of Mr. Kay's testimony that Frances placed petitioner's name on the accounts as a matter of convenience.

Moreover, although petitioner is correct that a stricter standard of proof is required for proving fraud, mistake, or other serious fault because the "signature card and deposit speak the final agreement entered into by the donor depositor and are regarded as the strongest evidence of the donor depositor's intent," *Lutz v. Orinick*, 184 W. Va. 531, 535, 401 S.E.2d 464, 468 (1990), we have also found that "the language of a contract or agreement governing accounts is not the sole determinant of the ownership of those accounts" as the existence of a fiduciary or confidential relationship "can affect the ownership of the accounts and the rights of the parties." *Koontz v. Long*, 181 W. Va. 800, 804, 384 S.E.2d 837, 841 (1989). In determining ownership of jointly held accounts, "the universal thread or key to the decisions has been the intention of the donor depositor." *Dorsey*, 157 W. Va. at 872, 205 S.E.2d at 691. Mr. Kay's notes and testimony provide direct evidence of Frances's intent in jointly titling the subject accounts. Accordingly, we find no error in the circuit court's conclusion that the proceeds of the subject accounts are probate assets rather than a causa mortis gift.

Petitioner next claims that the circuit court erred in determining that she waived the issue of respondent's present day valuation of the proceeds of the subject accounts for failing to raise the issue below. Petitioner submits that the issue was, in fact, raised.

We find no error in the circuit court's conclusion that petitioner waived any challenge to the present day valuations. Although a review of the record shows that petitioner mentioned the present value calculation, she provided no law, analysis, or explanation for her assertions that the valuations were speculative, unlawful, or unwarranted.[2] We have repeatedly found that inadequately briefed arguments are waived and need not be addressed on appeal. *Tiernan v.*

---

[2] Petitioner does cite West Virginia Code § 31-4A-33 to argue that the subject accounts passed to her as a joint owner, but the circuit court adequately addressed that argument.

*Charleston Area Med. Ctr.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 n.10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived."); *State, Dep't of Health and Human Res., Child Advocate Office ex rel. Robert Michael B. v. Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("'[A] skeletal "argument", really nothing more than an assertion, does not preserve a claim.'") (citation omitted); *see also Ohio Cellular RSA Ltd. P'ship v. Bd. of Pub. Works*, 198 W. Va. 416, 424 n.11, 481 S.E.2d 722, 730 n.11 (1996) (declining to address inadequately briefed assignment of error). To preserve her claim, petitioner was required to adequately brief it before the circuit court, which was sitting as an appellate court. Petitioner failed to do so, however, and because this Court may "affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment," we find no error in the court's conclusion that petitioner waived this claim. Syl. Pt. 3, in part, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).

Lastly, petitioner claims error in the lower tribunals' assessment of missing assets against her share of the Frances Casdorph estate. Petitioner argues that because the residuary clause dictated that assets pass two-thirds to her and one-third to respondent, she owned two-thirds of those assets and only one-third of the value of any missing or misappropriated property should have been assessed against her share.

We find no merit to petitioner's final assignment of error. The fiduciary commissioner's recommendation, affirmed by both the County Commission and circuit court, was that any assets "that have since gone missing, may, at the sound discretion of the personal representative, be deemed to have been distributed to [petitioner], inasmuch as their loss is directly attributable to her malfeasance and nonfeasance," and the Frances Casdorph estate "calculated accordingly." Thus, the value of any missing assets would be assessed against petitioner's two-thirds share of the residuary. Petitioner has failed to demonstrate that this conclusion operated to deprive her of anything to which she was entitled. Rather, as found by the lower tribunals, if the assets that were lost or became unaccounted for during her administration of the estate were not charged against her two-thirds share, petitioner would profit from her malfeasance and nonfeasance. Petitioner has, therefore, demonstrated no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: September 9, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison